AUERBACH SHOE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37955. Promulgated November 6, 1953.

---

*Harry Bergson, Esq.*, for the petitioner.
*Lester H. Salter, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* The respondent determined 50 per cent additions to the tax under section 293 (b) of the Internal Revenue Code for fraud in the amounts of $3,207.27 and $19,421.84 based on deficiencies in excess profits taxes for the fiscal years ended October 31, 1944 and 1945, respectively, and of $1,504.89 based on a deficiency in declared value excess-profits tax for the fiscal year ended October 31, 1945. The sole issue is whether the additions to tax for fraud were properly determined.

All of the facts have been stipulated and are so found.

The petitioner is a Massachusetts corporation engaged in the manufacture and sale of shoes at wholesale. The petitioner maintained its books and filed its Federal tax returns on the accrual basis covering fiscal years ending October 31. It filed timely returns for the fiscal years ended in 1944 and 1945 with the collector of internal revenue at Boston, Massachusetts.

Hyman Auerbach was president and treasurer of the petitioner during its fiscal years 1944 and 1945 and was owner of 225 shares of its common stock, which were all of the shares of the petitioner issued and outstanding at that time.

During the petitioner's fiscal years ended in 1944 and 1945, Hyman Auerbach received compensation from the petitioner in the amounts of $21,824.29 and $31,725.10, respectively. On January 2, 1946, 200 shares of preferred stock, par value $100 each, were issued for cash to David Auerbach, son of Hyman Auerbach.

During the fiscal years ended in 1944 and 1945 the petitioner's gross sales as recorded on its books amounted to $652,854.36 and $1,214,-672.79, respectively. These were reported on its returns.

The petitioner's income and declared value excess-profits tax returns for the years in question were signed by Hyman Auerbach as president and treasurer. He also signed the excess profits tax returns for such years. The returns understated the actual income of the petitioner.

During these years Hyman Auerbach devoted his full time to the management of the business of the petitioner, principally in charge of its sales. He sold goods belonging to the petitioner, chiefly shoes, in

the amounts of $13,788.80 in the fiscal year 1944 and $54,456.43 in fiscal 1945 and retained the proceeds of the sales for his own uses. His method was to get the bills of lading before they reached the petitioner's bookkeeper, personally to make out invoices for the sales, and then to collect the amounts of the sales from the customers. The amounts thus received were not reported by Hyman Auerbach on his individual income tax returns for the appropriate years, nor were they reported on the petitioner's tax returns. The cost to the petitioner of the goods so sold and unreported was included in "Cost of Goods Sold" in its returns for these years.

Neither the clerk nor the directors nor any employee of the petitioner other than Hyman Auerbach had knowledge of his diversion of the proceeds of the above-mentioned sales or of the petitioner's failure to disclose these amounts on its Federal tax returns.

In May 1947, the petitioner voluntarily disclosed to the respondent that it had unreported income in 1943, 1944, 1945, and 1946. Thereupon an examination of the petitioner's books for the years 1944 through 1947 was undertaken by the respondent and the following deficiencies were disclosed:

| Kind of tax | Deficiency for fiscal year ended Oct. 31 | |
| | 1944 | 1945 |
| --- | --- | --- |
| Income | $1, 510. 30 | ......... |
| Declared value excess-profits | 94. 70 | $3, 009. 78 |
| Excess profits | 6, 414. 53 | 38, 843. 67 |

The examination also disclosed that the petitioner had incurred a net operating loss in its fiscal year ended October 31, 1947. On May 17, 1948, the petitioner filed an application for tentative carry-back adjustment by reason of its net operating loss in 1947. By the application of the tentative carry-back adjustment and an unused excess profits credit carry-back, the petitioner's tax liability for its fiscal years 1944 and 1945 was modified as follows:

| Kind of tax | Fiscal year ended in | |
| | 1944 | 1945 |
| | Deficiency | Overassessment |
| --- | --- | --- |
| Income | $3, 590. 64 | $3, 993. 45 |
| Declared value excess-profits | 94. 70 | ......... |
| Excess profits | ......... | 16, 915. 18 |

On May 14, 1948, the petitioner executed a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment" (Form 874), which set forth deficiencies for the taxable year ended October 31, 1944, in income tax in the sum of $3,590.64 and 50 per cent penalty of $1,795.32, and in declared value excess-profits tax in the sum of $94.70 and 50 per cent penalty of $47.35, amounting to the total sum of $3,685.34 and penalty of $1,842.67 and accepted as correct overassessments of tax for the taxable year ended October 31, 1945, income tax in the sum of $3,993.45 and excess profits

tax in the sum of $16,915.18, and for the taxable year ended October 31, 1946, income tax in the sum of $2,666.87.

The petitioner received refunds for these overassessments.

The notice determining the deficiencies here involved was mailed in September 1951. These deficiencies in additions to the tax for fraud were computed on the basis of the original deficiencies in excess profits tax and declared value excess-profits tax before application of the excess profits credit and net operating loss carry-backs.

The taxpayer filed false and fraudulent returns for the fiscal years ended in 1944 and 1945 with intent to evade tax. At least a part of the deficiencies in tax for such fiscal years was due to fraud with intent to evade tax attributable to the petitioner.

The petitioner contends that this Court is not required as a matter of law to find the petitioner chargeable with the fraudulent conduct of its president, Hyman Auerbach, and, such a finding not being required as a matter of law, the respondent has failed to sustain the burden of proving as a fact that the petitioner was guilty of fraudulent conduct at the time of filing its returns for the fiscal years 1944 and 1945.

Auerbach knowingly concealed sales made of the petitioner's goods and retained the proceeds for himself. He arranged to keep these sales from being recorded on the petitioner's books. He made false affidavits on the petitioner's returns certifying them as true and correct when he knew they were not. These facts permit of no other conclusion than that the corporation's tax returns for the fiscal years 1944 and 1945 were fraudulently filed with the intention of evading tax. The intent of the president and owner of all the common shares of the corporation is to be imputed to the corporation. *Currier* v. *United States*, (C. A. 1, 1948) 166 F. 2d 346. *Saven Corporation*, 45 B. T. A. 343 (1941). The fact that Auerbach may have also intended to conceal his own wrongdoing in filing fraudulent returns on behalf of the corporation is not inconsistent with this conclusion. *Summerill Tubing Co.*, 36 B. T. A. 347 (1937). See *Spies* v. *United States*, 317 U. S. 492 (1943).

The petitioner argues that under the law of Massachusetts, the place where the petitioner's income tax returns were filed, Auerbach's fraud may not be imputed to the corporation. We are concerned with the application of the Code provision relating to the imposition of additions to the tax for fraud. To permit its application to depend upon the law of a state would frustrate the purpose of the statute and render impossible the desired uniform application of a Federal taxing statute. *Burnet* v. *Harmel*, 287 U. S. 103 (1932).

The petitioner contends that an assessment of its tax liability for the fiscal years 1944 and 1945 having been made in 1948, the Commissioner could not subsequently, in 1951, assert a further liability against

it for the same fiscal years in the form of additions to the tax for fraud. The petitioner argues that the Commissioner's determination in 1948 of its tax liability for the years 1944 and 1945 was a determination of its entire tax liability for those years, which could not subsequently be reopened unless it was shown that the petitioner had additional income subject to tax.

The additions to the tax here involved are determined pursuant to section 293 (b) of the Internal Revenue Code.[1] The same provision, as it appeared in an earlier revenue law, was interpreted in *Thomas J. McLaughlin*, 29 B. T. A. 247 (1933). In that case the Commissioner determined deficiencies in income tax and assessed a 25 per cent delinquency penalty against the taxpayer in 1930. Thereafter the taxpayer was found guilty of income tax evasion. After this the Commissioner sent to the taxpayer a notice determining 50 per cent additions to the tax for fraud. In upholding this action the Board considered section 275 (a) and (b) of the Revenue Act of 1926, now section 293 (a) and (b) of the Code, and said at page 248:

These provisions, on their face, contain nothing that would require respondent to enforce penalties simultaneously with the assertion of a tax liability or forever after prevent him from asserting a penalty liability. The statute treats the penalties as "additions to the tax" and the only requirement as to enforcement proceedings is that they shall be "assessed, collected, and paid, *in the same manner*" as if they were deficiencies.

The petitioner also contends that by section 3612 (d) (2) and (e) of the Code, the respondent is required to determine, assess, and collect interest and other additions to the tax *at the same time* and in the same manner and as a part of the tax.

We are concerned with additions to tax determined under section 293 (b), which by its terms is "in lieu of the 50 per centum addition to the tax provided in section 3612 (d) (2)." Section 3612 is not here involved.

The petitioner further argues that its execution of a "waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment" (Form 874) at the respondent's request amounted to an account stated between the parties, which represents a determination by the respondent of the petitioner's entire tax liability and which precludes the assertion of any further liability absent a showing that additional tax is due. There is no merit in this argument. In order to bind the Government and to preclude it from asserting a further liability it is necessary for the petitioner here to show that it entered into a compromise or closing agreement with the

---

[1] Sec. 293 (b). FRAUD.—If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612 (d) (2).

respondent in the manner provided by the Internal Revenue Code (Secs. 3760 and 3761). *Joyce* v. *Gentsch*, (C. A. 6, 1944) 141 F. 2d 891. See *Payson* v. *Commissioner*, (C. A. 2, 1948) 166 F. 2d 1008, and *Bank of New York* v. *United States*, (C. A. 3, 1948) 170 F. 2d 20.

The petitioner also argues, in effect, that since the 50 per cent addition to tax is measured by the deficiency, the elimination of the deficiency by a credit or a carry-back must have the effect of barring collection of the addition to the tax.

We have held, in *P. C. Petterson*, 19 T. C. 486, that the original deficiency in tax, undiminished by a subsequent loss carry-back, is the proper base for computing the 50 per cent addition to the tax for fraud. And in *C. V. L. Corporation*, 17 T. C. 812, we held that the 25 per cent delinquency penalty is not excused by the occurrence of a net operating loss carry-back which eliminates the original tax liability. See also *Manning* v. *Seeley Tube & Box Co. of New Jersey*, 338 U. S. 561 (1950), *Cumberland Portland Cement Co.* v. *United States*, (C. A. 6, 1953) 202 F. 2d 152, and *Rodgers* v. *United States*, (Ct. Cl. 1952) 108 F. Supp. 727.

The taxpayer is required to report the correct amount of his income in filing a return. Where this is not done due to the taxpayer's fraudulent conduct, liability for the 50 per cent addition to the tax for fraud is incurred and the unforeseen circumstance that a carry-back later arises to offset the deficiency should not operate to relieve the taxpayer of the addition imposed for the fraud. The tax and additions to the tax where the return is false and fraudulent with intent to evade tax may be assessed at any time. Section 276 (a), Internal Revenue Code. The liability for the additions to the tax for fraud existed from the time of the filing of the false and fraudulent return with intent to evade tax. The addition is to be measured by the deficiency, undiminished by any subsequent credit or carry-back.

The petitioner argues that the failure of the respondent to determine the additions to the tax for fraud prior to the application of the carry-back which extinguished the tax once due now bars the determination of such additions. We think this contention is also without merit. It is not material whether the credit is claimed before or after the determination or assessment of the deficiency in tax, or whether the respondent, because of the credit, has never assessed the deficiency in tax. If a delay in the administrative action in assessment led to a different result in one case where a loss carry-back arose before assessment than in another where a carry-back arose after assessment, there would be an unwarranted discrimination between the taxpayers concerned. We could not countenance the result for which the petitioner seems to contend. The respondent properly determined these deficiencies.

*Decision will be entered for the respondent.*