ACE TOOL & ENG., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 37932.   Filed June 30, 1954.

*B. W. Minsky, Esq.*, for the petitioner.
*Francis B. Campbell, Esq.*, for the respondent.

834

836

838

## OPINION.

Harron, *Judge:* The petitioner corporation admits that gross income of $51,178.75 for 1942 and of $78,493.68 for 1943 was not reported

in its returns for those years. But petitioner claims that there are no deficiencies in taxes because even if it should have reported such income, it is entitled to a loss deduction in each year in an identical amount because, it alleges, the amounts in question were embezzled by its president, Fidler. Petitioner claims a loss in each year under section 23 (f) of the Code which allows deduction for a loss not compensated for by insurance, or otherwise.

The petitioner corporation has the burden of proving that it sustained a loss in each year, the amount of the loss, and that it was not compensated for by insurance, or otherwise.

Upon consideration of the entire record, we find and conclude that early in 1942, the three officer-stockholders, who were also petitioner's directors, agreed, for the purpose of evading petitioner's taxes, that a substantial part of petitioner's sales should not be recorded in its books, or reported in its tax returns, and should be divided equally among the stockholders. We find and conclude, also, that the three stockholders were aware, during 1942 and 1943, of this concealment of the receipt of a large part of petitioner's income, and that such concealment was fraudulent, willful, and deliberate.

The evidence establishes beyond any doubt that petitioner's president, Fidler, and its secretary and treasurer, Smith, intended to omit from petitioner's books and tax returns a substantial part of its gross income for 1942 and 1943 for the purpose of evading petitioner's taxes, and that their intent was fraudulent.

The petitioner corporation endeavors to escape from the consequences, in this case, of the deliberate acts of its president and secretary-treasurer by ascribing to both of them, or to its president, alone, a plan of embezzling petitioner's funds, and of cheating a minority stockholder, Petyus. Petyus, in petitioner's behalf in this proceeding, disclaims knowledge of and participation in the scheme. We are not impressed by petitioner's theory, and upon the entire record it is rejected.

We are satisfied from all of the evidence that Petyus, in the early part of 1942, agreed with Fidler and Smith to pursue the scheme to omit the recording, the banking, and the reporting in petitioner's tax returns of a substantial part of petitioner's receipts. We are convinced, also, that he agreed with Fidler and Smith to falsification of petitioner's records to show payment of salaries to them in lesser amounts than they received, for the purpose of tax evasion. That Petyus had an interest in evading tax is demonstrated by his failure to report in his individual return for 1943, the share of the payment of O'Neal & Company which he retained. Furthermore, he admits that he received at least $500 from Fidler in 1942 as his share of a "split-up" of some of petitioner's receipts. He admits, also, that he agreed to have petitioner's books and records show the payment of

salaries of officers in 1943 in amounts less than the amounts actually paid in order to evade payment of withholding tax by the corporation and of income tax by the officers on the full amounts of their salaries.

Fidler and Smith admit that there were such agreements. Each of them, either in testimony or in sworn statements given to respondent's agents during their investigation of petitioner's income tax returns, has implicated Petyus. We are unable to believe Petyus' denial of knowledge of and participation in the scheme to understate petitioner's true income in the taxable years.

During the years in question, Petyus worked in the shop and supervised the shop employees. He had firsthand knowledge of the volume of work being done by the petitioner. He knew from experience, approximately, the profit realized on each job. He admits that he checked the books of the company, at least during most of 1942. The books reflected sales of $41,206 for 1942; it is now stipulated that petitioner's sales for 1942 were $92,384. In view of these facts, the testimony of Petyus that he had only a suspicion that all sales were not being recorded in the books and that the corporation was making more money than was indicated by the books strains credulity.

The question before us is whether petitioner sustained losses from alleged embezzlements in 1942 and 1943. We should first consider that question. It will then be in order to comment upon the relevancy and materiality of the allegation of Petyus that he was cheated out of his share of petitioner's net earnings in 1942 and 1943 by Fidler and Smith.

In order for petitioner to succeed in its contention that someone embezzled some of its earnings in the taxable years, it must show that there was no consent to or condoning of the appropriation of funds and that the person or persons who appropriated funds were liable to return the full amount to the corporation. *Commissioner* v. *Wilcox*, 327 U. S. 404.

In this case, Fidler, Smith, and Petyus were in complete control of the petitioner corporation. Fidler was authorized by a corporate resolution, which was adopted on June 24, 1942, to endorse and cash checks made payable to petitioner. Smith and Petyus joined with him in the scheme to omit the recording of receipts on petitioner's books. They received from Fidler, out of the sums which he held, the proceeds of checks made payable to petitioner, payments of salary in excess of the recorded amounts of their salaries. They agreed, the three stockholders, that they would share in the proceeds. Their *intent* was to receive the unrecorded, net income of petitioner as constructive dividends. Under these circumstances, it cannot be said that the withholding of part of petitioner's net income in 1942 and 1943 was not condoned or consented to, or that there was an obligation

to return the funds to petitioner. See *Currier* v. *United States*, 166 F. 2d 346, where the contention that the chief, if not sole, stockholder of a corporation embezzled its funds was rejected. See also, *Kann* v. *Commissioner*, 210 F. 2d 247, affirming 18 T. C. 1032, where under similar facts, it was said that stockholders "were to a large extent taking their own money."

We think it is clear that petitioner's president, Fidler, with the consent of the other two stockholders, in the first instance, during 1942 and 1943, held the funds in question for petitioner's use and benefit. This is borne out by his having used part of the funds, in each year, to pay some of petitioner's operating expenses, namely, $14,984.51 in 1942, and $18,690 in 1943. The balance, $36,194.24, and $59,803.68, represented net earnings available to the stockholders. It is concluded that the above net amounts were withheld for distribution to stockholders as informal or constructive dividends.

Neither Fidler nor Smith has been convicted of embezzling petitioner's funds. Such external evidence of embezzlement, which was present in the *Wilcox* case, is lacking in this case. On the other hand, there is clear evidence here of fraudulent intent on the part of petitioner's three stockholders to evade petitioner's tax. The distinction between "embezzlement" in the *Wilcox* case, and the "fraud" in *Rutkin* v. *United States*, 343 U. S. 130, is again illustrated here. See *W. L. Kann*, 18 T. C. 1032, 1044. Furthermore, in deciding the question in this case, we should not approve a "local law concept of embezzlement * * * useful to deter those in control of a corporation from defrauding * * * minority stockholders" to be used "as a vehicle for tax avoidance, absent a clear mandate to the contrary." *Kann* v. *Commissioner*, *supra*. The intent of the president is to be imputed to the corporation. *Auerbach Shoe Co.*, *infra*.

With respect to the contention that Fidler and Smith conspired to defraud Petyus of his share of part of the net earnings of petitioner for 1942 and 1943, after the scheme was in operation, we make the following observations. There is no clear proof that Fidler and Smith in fact cheated Petyus of his shares. For example, there is a suggestion that Petyus was making use of petitioner's machinery and equipment for his own personal profit by taking payments for jobs rather than turning the payments over to petitioner. It is true that counter suits were filed in 1945 by petitioner against Fidler and Smith, and by Fidler against petitioner, which were settled out of court in 1947. But this litigation is not relevant nor material to the question in this proceeding in view of the facts found from the entire record. We think it is significant that the litigation was instituted after revenue agents had discovered that petitioner's income was understated in its returns for 1942 and 1943. It is entirely possible that when revenue agents discovered the facts relating to petitioner's tax liability, peti-

tioner's stockholders desired to disavow their tax evasion scheme. Furthermore, since the evidence establishes, in our opinion, that all of the stockholders agreed and consented to the plan of concealing petitioner's true income, it is not material to a decision of the issue before us that a minority stockholder may have believed that he was getting the "short-end" of the bargain. If that was true, it happened after the scheme was in operation; and if Petyus, in fact, was cheated out of his full share of all of petitioner's net earnings in 1942 and 1943, in the operation of a scheme to which he consented, his grievance was a personal one, and his remedy was to be found in making claim against Fidler and Smith, as individuals, for wrongfully taking his share of petitioner's earnings. Whatever the real situation may have been, petitioner cannot successfully make use, in this case, of such dispute between Petyus and the other two individuals. That dispute is not material.

What we said in *W. L. Kann, supra*, p. 1044, is appropriately paraphrased here. The evidence satisfies us that the whole project was a false front erected to deceive the Commissioner of Internal Revenue rather than the petitioner corporation. A corporation acts only through its officers and we must conclude that the scheme before us resulted from the fraud of the petitioner corporation (see *Auerbach Shoe Co.*, 21 T. C. 191, 194), and that under these circumstances no support can be found for a contention of the petitioner corporation that it was a victim of any embezzlement.

It is held that petitioner did not sustain losses in 1942 and 1943, respectively, of $51,178.75 and $78,493.68, respectively, or of any part thereof.

The petitioner does not contest the penalties imposed under section 291 (a) of the Code.

The cases cited by petitioner are distinguishable on their facts.

*Decision will be entered for the respondent.*