MAZZOCCHI BUS CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; NICHOLAS MAZZOCCHI AND ESTATE OF ROSE MARIE MAZZOCCHI, DECEASED, MARY MAZZOCCHI, EXECUTRIX, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mazzocchi Bus Co. v. Commissioner
Docket Nos. 36768-86, 36769-86
United States Tax Court
T.C. Memo 1993-43; 1993 Tax Ct. Memo LEXIS 37; 65 T.C.M. (CCH) 1858; February 2, 1993, Filed *37 Decisions will be entered for respondent. For Petitioners: Thomas S. Carles and Douglas R. Eisenberg. For Respondent: Daniel K. O'Brien and Ismael Gonzalez. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: In these consolidated cases respondent determined deficiencies in petitioners' Federal income tax and additions to tax for fraud for the taxable years 1974 through 1979 as follows: Mazzocchi Bus Co., Inc., Docket No. 36768-86
Fraud Addition to Tax
Year
Deficiency
Under Sec. 6653(b) [1]
6/30/75
$ 62,188.04
$ 37,669.52
6/30/76
86,570.27
43,538.13
6/30/77
91,701.07
49,217.04
6/30/78
58,738.80
29,369.40
6/30/79
26,594.84
26,047.42
Nicholas Mazzocchi and Estate of Rose Marie Mazzocchi, Deceased, Mary Mazzocchi, Executrix, Docket No. 36769-86
Fraud Addition to Tax
Year
Deficiency
Under Sec. 6653(b) [1]
1974
$ 27,062
$ 13,531
1975
89,073
45,024
1976
128,172
65,387
1977
96,166
48,515
1978
67,686
33,843
1979
58,716
29,358
*38 The issues presented for our consideration are: (1) Whether Mazzocchi Bus Company, Inc. (MBC), had unreported sales for the fiscal years ended June 30, 1975 through 1979; (2) whether MBC is liable for additions to tax for fraud under section 6653(b)[1] for fiscal years ended June 30, 1975 through 1979; (3) whether petitioners Nicholas Mazzocchi and the Estate of Rose Marie Mazzocchi had unreported income for the years 1974 through 1979 and, if so, whether it is taxable as ordinary income or capital gain; (4) whether Nicholas Mazzocchi is liable for additions to tax for fraud under section 6653(b) for each of the years in issue; (5) whether Nicholas Mazzocchi is collaterally estopped from denying fraud for taxable year 1976; and (6) whether the statute of limitations bars the assessment of income tax deficiencies *39 and additions to tax of MBC for the years in issue. FINDINGS OF FACT Some of the facts have been stipulated and the stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petitions in these cases were filed, MBC, a corporation duly organized under the laws of the State of New Jersey, had its principal place of business in Bernardsville, New Jersey. Nicholas Mazzocchi resided in Bernardsville, New Jersey, and Mary Mazzocchi resided in Flanders, New Jersey. For the years in issue, Nicholas Mazzocchi and Rose Marie Mazzocchi filed joint Federal income tax returns. During the fiscal years ended June 30, 1975 through 1979, Nicholas Mazzocchi was president and controlling shareholder of MBC. MBC was engaged in the business of providing schoolbus transportation. During the *40 summer months, the company provided bus transportation services for summer camps. MBC leased its corporate headquarters located at 119 Morristown Road from Nicholas Mazzocchi who, along with his late spouse, purchased the property in 1971 and owned it throughout the period under consideration. During the fiscal years ended June 30, 1975 through 1978, MBC maintained formal books and records consisting of cash receipts sheets, cash disbursement sheets, subsidiary account ledgers, a general ledger, and journal sheets. Paul Maurer, a certified public accountant, prepared the corporation's returns from these corporate records. MBC utilized the cash basis method of accounting. Under MBC's bookkeeping system the deposit of business receipts to the corporate checking account was the event that caused the recording of receipts as gross income on the records, and eventually the income tax returns, of the company. The standard office procedure was as follows: any mail addressed to the business was opened by a secretary; mail addressed to Nicholas Mazzocchi was opened by him. Checks from customers that were received by mail addressed to MBC were given by the secretary to Nicholas Mazzocchi. *41 In his absence, checks received were placed in the bookkeeper's in-box or in a filing cabinet. The customer cash receipts that were either presented to the bookkeeper directly from Nicholas Mazzocchi or left for her attention were then entered by the bookkeeper into the corporate cash receipts book. The bookkeeper endorsed checks she received by affixing an MBC "for deposit" stamp on the back, filled out the deposit slips, and then deposited the checks into the corporate checking account either by mail or hand delivery to the bank. During the fiscal years ended June 30, 1975 through 1978, MBC's records did not reflect any customer business receipts in the form of cash. Nicholas Mazzocchi occasionally directed the bookkeeper to deviate from standard office procedure: sometimes he would instruct her to cash checks received by the business and not record those checks in the cash receipts book. On July 7, 1977, Nicholas Mazzocchi opened a savings account in the name of MBC at Midlantic National Bank (Midlantic). On that date, four checks totaling $ 88,347.96 were deposited into the savings account. Three of these checks were made out to MBC, and the remaining check from Morris *42 County Educational Services Commission was made to the order of Nicholas Mazzocchi. The following day, July 8, 1977, another check in the amount of $ 32,327.95 from Morris County Educational Services Commission payable to Nicholas Mazzocchi was deposited in the savings account. Nicholas Mazzocchi was a longtime employee of Gill/St. Bernard's School (Gill/St. Bernard's), a customer of MBC. In his capacity as head of maintenance for the school, Nicholas Mazzocchi was provided with a mailbox on campus. That school did not mail its bus service payments to MBC but instead placed the payment checks in Nicholas Mazzocchi's campus mailbox. During the fiscal years ended June 30, 1975 through 1978, Gill/St. Bernard's received 3 invoices from MBC bearing the company letterhead and 43 invoices bearing the letterhead "N.J. Mazzocchi". During this period Gill/St. Bernard's remitted checks for transportation services in the amounts of $ 119,963.20, $ 123,731.95, $ 133,403.13, and $ 113,793.85, [2] respectively. These payments were not recorded in the cash receipts records of MBC nor were they reported as part of the receipts on MBC's income tax returns for each of the 4 years. *43 During the same 4-year period, in addition to the checks from Gill/St. Bernard's, MBC also did not report payment checks from other customers on its corporate returns as follows: Customer
1975
1976
1977
1978
Holiday Hill
$ 9,355.61
$ 10,403.14
[1] $ 9,309.67
$ 152.40
Inc.
Far Hills
---   29,500.00
14,000.00
13,500.00
Country Day
School
Township of
---   12,033.14
8,623.02
---   Bernards
Stonybrook
---   13,042.24
18,286.24
3,605.00
Day Camp
Township of
---   ---   2,182.50
---   Branchburg
Township of
240.00
---   ---   ---   Passaic
Watchung
---   ---   150.00
---   Board of
Education
Totals
$ 9,595.61
$ 64,978.52
$ 52,551.43
$ 17,257.40
For fiscal years ended June 30, 1975 through 1978, MBC had unreported business *44 receipts in the respective amounts of $ 129,558.81, $ 188,710.47, $ 185,774.56, and $ 151,051.25 which were negotiated either at Midlantic or the First National State Bank of West Jersey. Of these unreported customer checks, 60 contain the single endorsement of Nicholas Mazzocchi and 19 contain the initial endorsement of MBC followed by the second endorsement of Nicholas Mazzocchi. During the fiscal year ended June 30, 1979, Gill/St. Bernard's paid MBC a total of $ 140,467.12 for busing services rendered. As in the 4 prior years, these business receipt checks were not recorded in the cash receipts records or deposited to the corporate checking account. At the request of Nicholas Mazzocchi and deviating from its standard practice, Gill/St. Bernard's, in payment of a $ 42,015 invoice, issued separate checks each in an amount under $ 10,000. In addition, business receipt checks from two other customers totaling $ 39,177.90 were similarly omitted from MBC's cash receipts records and were not deposited in the corporate checking account. At the close of the taxable year, MBC's return preparer made adjusting entries to MBC's corporate records reflecting $ 123,070 of additional income. *45 Despite this adjustment, MBC failed to include on its corporate return income in the amount of $ 56,575.02. During the fiscal years ended June 30, 1975 through 1978, Nicholas Mazzocchi utilized $ 371,126 of unreported corporate business receipts from Gill/St. Bernard's to make commercial paper investments in his individual name at Midlantic. During this same period, Nicholas Mazzocchi made $ 91,359 in commercial paper investments at Midlantic from undetermined sources. On July 6, 1979, Nicholas Mazzocchi redeemed his commercial paper investment at Midlantic Bank for a bank cashier's check in the amount of $ 388,369.33. Nicholas Mazzocchi on July 10, 1979, in turn purchased seven cashier's checks, each in the amount of $ 50,000 and one $ 38,369.33 bank cashier's check. The seven $ 50,000 checks were utilized to purchase commercial paper. On July 27, 1979, Nicholas Mazzocchi used the $ 38,369.33 bank cashier's check to purchase five bank cashier's checks, each less than $ 10,000. On November 28, 1979, Nicholas Mazzocchi withdrew $ 63,474.10 in principal and interest from a $ 363,474.10 commercial paper investment at Midlantic. This withdrawal was structured so that Nicholas *46 Mazzocchi received cashier's checks each in an amount less than $ 10,000. By means of similarly structured transactions, Nicholas Mazzocchi withdrew in excess of $ 150,000 from commercial paper investments at Midlantic. During the years 1975 through 1979, Nicholas Mazzocchi earned interest income on his commercial paper investments at Midlantic in the amounts of $ 4,377.34, $ 7,877.26, $ 8,045.98, $ 23,109.43, and $ 44,771.45, respectively. During this period, Nicholas and Rose Mazzocchi reported no interest income from Midlantic for taxable years 1975 and 1978 and interest income from Midlantic of $ 2,393 for 1976, $ 3,367 for 1977, and $ 424 for 1979. On May 17, 1979, in the course of an investigation of MBC, Special Agent David Dryman of respondent's Criminal Investigations Division interviewed Nicholas Mazzocchi. At that time, Nicholas Mazzocchi stated that corporate business receipts were received by mail and opened by his secretary, who in turn gave them to the bookkeeper, who stamped them for deposit and then made the deposits to the business checking account. Nicholas Mazzocchi represented that he did not handle the business receipts and had little involvement in MBC's *47 bookkeeping, nor did he ever cash any corporate receipt checks or deposit any such checks to his personal account. On October 30, 1981, petitioner Nicholas Mazzocchi was convicted in the U.S. District Court for the District of New Jersey of willful attempted evasion of his individual income taxes for the year 1976 in violation of section 7201. OPINION 1. The Amount and Tax Treatment of Unreported Income
The income tax deficiencies are based on a determination that Nicholas Mazzocchi diverted money from his closely held corporation for his personal use and benefit and failed to report it (either individually or on the corporation's returns) for Federal income tax purposes. In the case of MBC, respondent computed the deficiencies for the corporation's fiscal years 1975 through 1979 by treating the diverted amounts as unreported taxable income of the corporation. In the case of Nicholas Mazzocchi and the estate of his spouse, respondent treated the diverted funds as constructive dividends for taxable years 1974 through 1979. It is respondent's position that inasmuch as Nicholas Mazzocchi negotiated all of the unreported business checks, unreported sales of the corporation *48 are properly apportioned to Nicholas Mazzocchi and the Estate of Rose Marie Mazzocchi for the years in issue in the amounts of $ 52,102.06, $ 155,814.35, $ 201,298.31, $ 156,212.45, $ 90,775.82, and $ 55,467.12, respectively. Respondent contends that MBC had sufficient earnings and profits so that the diverted funds were constructive dividends taxable at ordinary income rates. Petitioners do not dispute that income in the above amounts was diverted from MBC. They argue, however, that respondent's determination is in error because respondent's earnings and profits calculations failed to reduce earnings and profits for: Accrued but unpaid taxes, unpaid additions to tax for fraud, and unpaid interest payments attributable to the asserted tax deficiencies. Although petitioners have not provided an earnings and profits computation reflecting these downward adjustments, it appears to be petitioners' position that after such adjustments MBC would not have sufficient earnings and profits to cover all the distributions, and that all, or some portion, of the distributions therefore would represent either a return of capital or capital gain. In support of their argument that a cash basis *49 taxpayer is allowed to reduce earnings and profits by the amount of accrued but unpaid taxes in the year to which those taxes relate, petitioners rely on Rose v. Dobbs, 36 F.2d 464 (5th Cir. 1929); Hadden v. Commissioner, 49 F.2d 709 (2d Cir. 1931), revg. 17 B.T.A. 956 (1929); Drybrough v. Commissioner, 238 F.2d 735 (6th Cir. 1956), remanding United Mercantile Agencies, Inc. v. Commissioner, 23 T.C. 1105 (1955); and Demmon v. United States, 321 F.2d 203 (7th Cir. 1963). Petitioners' reliance on this line of cases is misplaced. [3] In Webb v. Commissioner, 67 T.C. 1008 (1977), we stated that subsequent to the Court of Appeals for the Eighth Circuit's reversal of our opinion in Alworth Trust v. Commissioner, 46 B.T.A. 1045 (1942), revd. 136 F.2d 812 (8th Cir. 1943), we have consistently followed that reversal and have not allowed cash basis taxpayers to reduce their earnings and profits on account of accrued but unpaid *50 taxes. Webb v. Commissioner, supra at 1019; see also Ferguson v. Commissioner, 47 T.C. 11, 31-34 (1966); United Mercantile Agencies, Inc. v. Commissioner, 23 T.C. 1105, 1114-1115 (1955), remanded sub nom. Drybrough v. Commissioner, 238 F.2d 735 (6th Cir. 1956); Dean v. Commissioner, 9 T.C. 256, 266-267 (1947), affd. on other grounds 187 F.2d 1019 (3d Cir. 1951). *51 The cases upon which petitioners rely were specifically addressed in Webb v. Commissioner, supra, wherein we stated: All accrued but unpaid expenses represent a realistic and economic cost to a cash method corporation, but no reason has been advanced in any of the cases for treating accrued taxes differently from other accrued but unpaid expenses. The decisions that have treated taxes differently are not persuasive because they were either decided under a statutory and regulatory scheme different from that now in existence, or their rationale was based upon certain fallacies. * * * [Id. at 1019; fn. ref. omitted.] Accordingly, MBC's earnings and profits should not be reduced by accrued but unpaid taxes, by unpaid additions to tax, or by unpaid interest due flowing from such accrued unpaid income tax. Petitioners also contend that the asserted deficiencies are in error because respondent's determination fails to reduce the amount of underreported income by business expenses incurred in connection with the unreported sales income. Petitioners contend that MBC incurred business expenses paid in cash on its behalf *52 by Nicholas Mazzocchi out of the diverted receipts as follows: Wages of $ 35,000 per year for summer bus drivers, between $ 50,000 and $ 75,000 per year in entertainment expenses, between $ 100,000 and $ 140,000 for purchases of buses, and in excess of $ 300,000 in expenses for renovating the corporate headquarters. Before addressing petitioners' argument, we note that while respondent bears the burden of proof with respect to the additions to tax for fraud, the burden of proving that deficiencies in income tax determined by respondent are in error remains with petitioners. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioners maintain that although the records of expense payments made by Nicholas Mazzocchi on behalf of MBC no longer exist, there is sufficient evidence in the record to substantiate petitioners' estimates of the claimed expenses. Entertainment Expenses
Nicholas Mazzocchi testified that he spent between $ 50,000 and $ 75,000 in cash each year entertaining MBC's clients. Entertainment expenses are not deductible from gross income unless, as a threshold matter, they are ordinary and necessary expenditures directly *53 connected with or pertaining to the taxpayer's trade or business. Sec. 1.162-1(a), Income Tax Regs. However, even if such expenses are business related within the meaning of section 162, they must be substantiated pursuant to section 274(d) and the regulations thereunder. Sec. 1.274-1, Income Tax Regs.Section 1.274-5(b), Income Tax Regs., establishes the following substantiation requirements a taxpayer must meet in order to deduct these expenses: Section 274(d) and this section contemplate that no deduction shall be allowed for any expenditure for travel, entertainment, or a gift unless the taxpayer substantiates the following elements for each such expenditure: (i) Amount; (ii) Time and place of travel or entertainment (or use of a facility with respect to entertainment), or date and description of a gift; (iii) Business purpose; and (iv) Business relationship to the taxpayer of each person entertained, using an entertainment facility or receiving a gift. Section 1.274-5(c), Income Tax Regs., states that a taxpayer must substantiate each element of an expenditure by adequate records or by sufficient evidence corroborating his own statement. To meet the adequate records *54 requirement, a taxpayer must maintain an account book, diary, statement of expense or similar record, and documentary evidence which are sufficient in combination to establish each element of an expenditure. Sec. 1.274-5(c)(2)(i), Income Tax Regs.
Section 1.274-5(c)(3), Income Tax Regs., provides an alternative if the taxpayer fails to comply with the adequate records requirement. This alternative substantiation requires the taxpayer to establish each element of the expenditure: (1) By his own statement, whether written or oral, containing specific information in detail as to such element; and (2) by other corroborative evidence sufficient to establish such element. Finally, section 1.274-5(c)(5), Income Tax Regs., also provides that a taxpayer has the right to substantiate a deduction by a reasonable reconstruction of his expenditures if his failure to produce adequate records is attributable to circumstances beyond his control, such as destruction by fire, flood, or other casualty. Petitioners have not complied with the detailed substantiation requirements of section 274 and the regulations thereunder. The testimony of Nicholas Mazzocchi was lacking in specific detail and *55 unaccompanied by any corroborative evidence. In addition, even if we were to find that petitioners' failure to produce adequate records was attributable to circumstances beyond their control, petitioners have not attempted to reconstruct the expenditures. Occasionally, when a taxpayer has insufficient records to substantiate claimed deductions, we may allow estimated expenses when we are convinced from the record that the taxpayer has incurred such expenses. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). For us to make an estimate there must be some evidence to show that the amount estimated actually was spent or incurred for the purpose claimed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731 (1985). We are unable to approximate petitioners' expenses under Cohan because section 1.274-5(a), Income Tax Regs., expressly supersedes the Cohan rule in cases of travel and entertainment expenses. Summer Bus Drivers and Equipment Purchases
Petitioners offered no evidence other than the self-serving and uncorroborated testimony *56 of Nicholas Mazzocchi that he paid approximately $ 35,000 a year in cash for summer bus drivers. While undoubtedly MBC incurred expenses for summer bus drivers, there is nothing in the record to demonstrate that such expenditures were not already taken into account as deductions on MBC's corporate returns for each of the years in issue. Nicholas Mazzocchi testified that he purchased three or four vehicles each year with cash, at an average cost of $ 35,000 per vehicle. However, Nicholas Mazzocchi further testified that he informed his accountant of these alleged purchases and they were included among the transportation equipment shown as acquired during these years on MBC's corporate returns for which depreciation deductions were taken. Petitioners are not entitled to any additional deductions in connection with these equipment purchases because the depreciation deductions claimed on MBC's income tax returns for transportation equipment for the years in issue were allowed in full. Renovation of Corporate Headquarters
Petitioners contend that funds in excess of $ 300,000 were utilized to make capital additions and alterations in 1974 to the corporate headquarters on Morristown *57 Road and to the garage at Jockey Hollow Road. Petitioners assert that Nicholas Mazzocchi used his own funds to make these repairs and improvements; petitioners contend that this portion of the diverted funds represents a repayment to Nicholas Mazzocchi of funds he previously loaned to the corporation. It is petitioners' position, therefore, not only that MBC's earnings and profits should be reduced by this amount, but also that this reimbursement is not income to Nicholas Mazzocchi. Respondent contends that the additions and alterations made to the Morristown Road property took place shortly after Nicholas Mazzocchi acquired the property in 1971 and that no alterations or capital improvements were made to the property during 1974. Respondent further asserts that even if any alterations or improvements were made to either the Morristown Road or Jockey Hollow Road property, they inured to the benefit of Nicholas and Rose Mazzocchi since they were the owners of both properties. Section 162 provides that there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Section 1.162-4, Income *58 Tax Regs., provides: The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense, provided the cost of acquisition or production or the gain or loss basis of the taxpayer's plant, equipment, or other property, as the case may be, is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall either be capitalized and depreciated in accordance with section 167 or charged against the depreciation reserve if such an account is kept. Petitioners have failed to establish the year in which the purported renovations were made or substantiate the amounts expended. Petitioners base their estimate as to the amounts expended for the renovations on a construction estimate prepared by F.J. Maggiore Associates, Inc., in August 1983, some 9 years after the renovations were purportedly done. Mr. Maggiore had no personal knowledge of when the renovations took place. Mr. Maggiore was not involved in the renovations *59 and based his estimates on assumptions of what the conditions "logically should have been". While in his report Mr. Maggiore assumed an architect or other professional would have been employed to provide redesign and supervisory assistance, petitioners presented no evidence from any such professional involved either to establish when the renovations took place or to corroborate Mr. Maggiore's assumptions. Finally, petitioners have failed to demonstrate that these purported expenses were not encompassed in the amounts claimed as deprecation deductions or repair expenses in the year incurred by Nicholas Mazzocchi on his individual income tax return. 2. Fraud
Section 6653(b) provides that if any part of the underpayment is due to fraud, there will be an addition to tax equal to 50 percent of the entire underpayment. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977). Respondent has the burden of proving by clear and convincing evidence that an underpayment exists for *60 the year in issue and that some portion of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). To meet this burden, respondent must show that petitioners MBC and Nicholas Mazzocchi intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Hicks Co. v. Commissioner, 470 F.2d 87 (1st Cir. 1972), affg. 56 T.C. 982, 1019-1030 (1971); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for the year in issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), *61 affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Fraud is not to be imputed or presumed; it must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, supra.However, because fraud can rarely be shown by direct proof of a taxpayer's intention, fraud may be proved by circumstantial evidence and reasonable inferences drawn from the facts. Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, supra at 1123. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106. The intent to conceal or mislead may be inferred from a pattern of conduct. Spies v. Commissioner, supra at 499. Where fraud is alleged against a corporate taxpayer, the requisite *62 proof of fraudulent intent is to be found in the acts of its officers, inasmuch as the corporation, being an artificial person created by law, has no separate intent of its own apart from those who direct its affairs. Benes v. Commissioner, 42 T.C. 358, 382 (1964), affd. 355 F.2d 929 (6th Cir. 1966); Ace Tool & Eng., Inc. v. Commissioner, 22 T.C. 833, 843 (1954); Auerbach Shoe Co. v. Commissioner, 21 T.C. 191, 194 (1953), affd. 216 F.2d 693 (1st Cir. 1954). The Court of Appeals for the Third Circuit has held that a corporation may not be subject to fraud penalties where an "innocent stockholder" holds half its shares. Asphalt Industries, Inc. v. Commissioner, 384 F.2d 229, 235 (3d Cir. 1967), revg. 46 T.C. 622 (1966). The record in this case is silent as to the existence or identity of any shareholders other than Nicholas Mazzocchi. Moreover, where, as here, a shareholder dominates the corporation it "will be considered to have been a party to the fraud." Id. at 234. In *63 deciding this issue courts have considered a number of indicia of fraud including: Understatement of income, maintaining inadequate records, failure to cooperate with tax authorities, concealment of assets, engaging in illegal activities, dealing in large amounts of cash, making implausible and inconsistent explanations of behavior, and making false and inconsistent statements to revenue agents. See Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980). Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia is persuasive circumstantial evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603; Beaver v. Commissioner, supra at 93. Although a single understatement of income alone may not be sufficient to prove fraud, the consistent and substantial understatement of income over a period of years has been held *64 to be strong evidence of fraud. Marcus v. Commissioner, 70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980). During the years in issue Nicholas Mazzocchi diverted considerable amounts of income earned by MBC, a corporation of which he was president and controlling shareholder, and failed to report this income either on the corporation's income tax returns or on his own individual returns for those years. A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. See Holland v. United States, 348 U.S. 121, 137 (1954); Truesdell v. Commissioner, 89 T.C. 1280, 1302 (1987); Otsuki v. Commissioner, supra. Nicholas Mazzocchi's course of conduct in connection with Gill/St. Bernard's (the source of the majority of unreported corporate sales) supports a finding of fraud. By employing a dual invoicing scheme and receiving payment directly to his campus mailbox, Nicholas Mazzocchi was able to circumvent *65 MBC's standard bookkeeping procedure, such that over a 5-year period not a single check from this customer was posted to cash receipts or deposited to the corporate checking account. The bookkeeper employed by MBC had no knowledge of these receipts. Moreover, to further conceal his actions, Nicholas Mazzocchi requested that Gill/St. Bernard's issue payment checks in amounts under $ 10,000. The fact that Nicholas Mazzocchi, over a number of years, withdrew sizable sums of money from Midlantic through a series of structured transactions is a further indicia of fraud. Nicholas Mazzocchi testified that he was aware that the bank was required to report cash transactions of more than $ 10,000 and he fashioned his transactions to avoid having them reported to the Internal Revenue Service. We find that the diversion of corporate funds by Nicholas Mazzocchi was carried out in this manner with the purpose and design of concealing their existence and avoiding income tax on these amounts. In addition to the concealment of assets, underreporting of income, and dealing in large sums of cash, Nicholas Mazzocchi's false representations to Special Agent Dryman that he did not handle the business *66 receipts nor that he ever cashed any corporate receipt checks or deposited any such checks in a personal account are further evidence of concealment and fraud. Truesdell v. Commissioner, supra at 1303. Based on the record before us, we conclude that respondent has carried the burden of proving fraud by clear and convincing evidence for all the years in issue as to both Nicholas Mazzocchi and MBC. In light of our holding that respondent has met the burden of proving fraud by clear and convincing evidence, the deficiencies in income tax and additions to tax determined by respondent are not barred by the statute of limitations. Sec. 6501(c)(1). 3. Estoppel
A criminal conviction based upon an indictment charging a willful attempt to evade tax in violation of section 7201 necessarily carries with it the ultimate factual determination that part of the deficiency for the tax year involved was due to fraud as encompassed in section 6653(b). Amos v. Commissioner, 43 T.C. 50, 56 (1964), affd. 360 F.2d 358 (4th Cir. 1965). Accordingly, a prior conviction of a taxpayer in a criminal proceeding *67 under section 7201 is conclusive and binding on the convicted taxpayer so that the doctrine of collateral estoppel precludes him from denying in a subsequent proceeding that a part of the underpayment for the same taxable year was due to fraud. Tomlinson v. Lefkowitz, 334 F.2d 262 (5th Cir. 1964); C.B.C. Super Markets, Inc. v. Commissioner, 54 T.C. 882, 893 (1970); Strachan v. Commissioner, 48 T.C. 335 (1967); Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68 (1964); Amos v. Commissioner, supra.For purposes of applying the doctrine of collateral estoppel, there is no difference between a judgment of conviction based upon a guilty plea and a judgment of conviction rendered after a trial on the merits. See Castillo v. Commissioner, 84 T.C. 405, 409-410 (1985); Arctic Ice Cream Co. v. Commissioner, supra at 75. [4] Accordingly, Nicholas Mazzocchi is also estopped to deny the imposition of the fraud addition for the 1976 taxable year. *68 In light of the foregoing, Decisions will be entered for respondent. Footnotes
1. In the alternative, respondent determined additions to tax under sec. 6651(a)(1) and (2)↩.
1. Respondent's determination of additions to tax under sec. 6653(b)↩ relates only to Nicholas Mazzocchi; therefore, the liability of the Estate of Rose Marie Mazzocchi is limited to the deficiency in tax.
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. The parties stipulated $ 113,793.85 was the correct amount; however, supporting documents reflect the figure to be $ 133,793.85. This difference is unexplained in the record, and accordingly we defer to the amount agreed to by the parties.↩
1. The parties stipulated $ 9,309.67 as the correct amount; however, the supporting documents reflect the figure to be $ 9,129.67. This difference is unexplained in the record and, accordingly we defer to the amount agreed to by the parties.↩
3. Appeal of this case would be taken to the Court of Appeals for the Third Circuit, which has not addressed the issue of whether a cash basis taxpayer is allowed to accrue Federal taxes in computing earnings and profits. In the setting of a criminal case the Court of Appeals held that a controlling shareholder who diverts money from his corporation realizes income without regard to corporate earnings and profits, United States v. Goldberg, 330 F.2d 30, 38 (3d Cir. 1964), cert. denied 377 U.S. 953 (1964), although other circuits and this Court have ruled otherwise in civil cases. See, e.g., Truesdell v. Commissioner, 89 T.C. 1280↩ (1987) (earnings and profits of corporation taken into account in deciding whether diverted corporate money is taxable as dividend). Insofar as petitioners here do not dispute that MBC's earnings and profits are sufficient to cover all the money Nicholas Mazzocchi diverted from it, unless the earnings and profits are reduced by accrued taxes we need only focus on the latter question.
4. See also Knoff v. Commissioner, T.C. Memo. 1992-624↩.