FRANCIS P. MANNING AND AUDRIE C. MANNING, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent MANNING v. COMMISSIONER
Docket Nos. 4917-90, 4920-90, 6116-90, 6117-90
United States Tax Court
T.C. Memo 1993-127; 1993 Tax Ct. Memo LEXIS 122; 65 T.C.M. (CCH) 2221; March 30, 1993, Filed *122 For petitioners: Harry Barbin. For respondent: Keith Gorman. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined the following deficiencies and additions to tax for petitioners Francis P. Manning and Audrie C. Manning, and petitioner corporation Francis P. Manning, M.D., Ltd.: Individual Petitioners
Additions To Tax
Years
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2) [1]
6661
1981
$ 11,394.00
$ 570.00  [2] *123 $ -     1982
25,394.34
1,269.72
[2]
6,348.59
1983
83,579.00
4,354.00
[2]
20,895.00
1984
126,517.00
6,326.00
[2]
31,629.00
1985
142,731.00
7,137.00
[2]
35,683.00
Additions To Tax
Years
Sec. 6651(a)(1) [1]
Sec. 6653(b)(1)
Sec. 6653(b)(2)
1981
$ -        $ 5,697.00
--
1982
-    12,697.17
[2]
1983
2,783.00
41,789.50
[2]
1984
-    63,258.00
[2]
1985
-    71,365.00
[2]
Corporate Petitioner
Additions To Tax
Years
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2) [1]
1982
$ 9,734.50
$ 486.72
[2]
1983
8,134.00
407.00
[2]
1984
6,488.00
324.00
[2]
1985
7,400.00
370.00
[2]
Additions To Tax
Years
[1]Sec. 6651(a)(1) Sec. 6653(b)(1)
Sec. 6653(b)(2)
1982
$ 486.73
$ 4,867.25
[2]
1983
-  4,067.00
[2]
1984
324.00
3,244.00
[2]
1985
370.00
3,700.00
[2]
After concessions, the following issues remain for decision: A. Petitioner Corporation
1. Whether petitioner corporation may deduct travel and entertainment expenses for 1982, 1983, and 1984, or automobile expenses and depreciation, net operating losses, business promotion expenses, and disability and life insurance expenses for 1982 through 1985. We hold that it may not. 2. Whether petitioner corporation may deduct meetings and seminars expenses for 1982 through 1985. We hold that it may deduct some of these expenses, as decided below. 3. Whether petitioner corporation is entitled to a $ 1,878 investment tax credit for 1984. We hold that it is not. 4. Whether petitioner corporation may adjust its earnings and profits for accrued but unpaid income taxes and penalties. We hold that it may not. B. Individual Petitioners
1. Whether petitioners may deduct Old Spanish Trail property expenses for 1985. We hold that they may not. 2. Whether petitioners may deduct charitable contributions for 1983, 1984, and 1985. We hold that, of the amounts in dispute, they may deduct $ 50 in 1983, $ 175 in 1984, and $ 250 in 1985. 3. Whether petitioners received *124 constructive dividends from petitioner corporation of $ 41,897 in 1982, $ 55,172 in 1983, $ 59,272 in 1984, and $ 53,661 in 1985. We hold that they did. 4. Whether petitioners received distributions in excess of earnings and profits of $ 21,070 in 1981 and $ 10,550 in 1985, and whether these amounts are taxable as capital gains to petitioners in the respective amounts of $ 8,428 and $ 4,220. We hold that to the extent the distributions petitioners received exceed earnings and profits for those years they are taxable as capital gains. 5. Whether petitioners are entitled to a rehabilitation credit for 1984 and to depreciation before April 2, 1984, for the Clinton Avenue property. We hold that they are not. 6. Whether petitioners are liable for the addition to tax for substantial understatement of tax under section 6661 for 1982 through 1985. We hold that they are. C. Petitioner Corporation and Individual Petitioners
1. Whether the notices of deficiency are arbitrary and capricious. We hold that they are not. 2. Whether assessment of tax for petitioners for 1981 is barred by the statute of limitations. We hold that it is not. 3. Whether petitioners are liable for additions *125 to tax for fraud under section 6653(b) for 1981, and whether petitioners and petitioner corporation are liable for fraud under section 6653(b)(1) and (2) for 1982 through 1985. We hold that petitioner corporation is, and that petitioners Francis P. Manning and Audrie C. Manning are in part. All references to petitioner are to Francis P. Manning, to petitioner wife are to Audrie C. Manning, to petitioners are to the individual petitioners, and to petitioner corporation are to Francis P. Manning, M.D., Ltd. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. TABLE OF CONTENTS
Findings of Fact
A.
Petitioner Corporation
1.
Petitioners
2223
2.
Petitioners Radiology Practice at Nazareth Hospital
2224
3.
Tax Return Preparation
2224
4.
Travel and Entertainment
2224
5.
Meetings and Seminars
2225
6.
Automobile Expenses
2227
7.
Disability and Life Insurance Expenses
2227
B.
Individual Petitioners
1.
Charitable Contributions
2228
2.
Clinton Avenue Property
2228
3.
Old Spanish Trail Property
2228
4.
Petitioners' and Petitioner Corporation's Tax Returns
2229
Opinion
A.
Petitioner Corporation
1.
Travel and Entertainment Expenses
2230
2.
Meetings and Seminars Expenses
2231
3.
Automobile Expenses and Depreciation
2233
4.
Life Insurance Expenses
2233
5.
Net Operating Losses
2233
6.
Investment Tax Credit
2234
7.
Corporate Distributions and Earnings and Profits
2234
B.
Individual Petitioners
1.
Charitable Contributions
2234
2.
Clinton Avenue Property
2235
3.
Old Spanish Trail Property
2236
4.
Constructive Dividends
2236
C.
Petitioner Corporation and Individual Petitioners
1.
Whether the Deficiency Determination Was Arbitrary and Capricious
2237
2.
Statute of Limitation for 1981
2237
3.
Additions to Tax for Fraud
2238
4.
Substantial Understatement Under Section 6661
2241
FINDINGS *126 OF FACT A. Petitioner Corporation
1. Petitioners
Petitioners were married in 1953 and lived in Huntingdon Valley, Pennsylvania, when the petitions were filed. Petitioner has bachelor's degrees in science, chemistry, and medicine from various universities in North Dakota. He went to medical school for 2 years at the University of North Dakota and 2 years at Temple University. During the years at issue, he practiced radiology at Nazareth Hospital in Philadelphia. Petitioners have four children: Miles, Barbara Holt, Patricia Kissel, and Kathalyn Allen (Kathalyn). Kathalyn attended Wilkes College in Wilkes-Barre, Pennsylvania, from August 1977 until June 1982. 2. Petitioner's Radiology Practice at Nazareth Hospital
Nazareth Radiology, Inc. (NRI), operated the radiology department of Nazareth Hospital. Before July 1981, the shareholders of NRI were petitioner and Drs. Joseph Beres, Joseph Clarke, and Frank Gregor. On July 1, 1981, petitioner formed Francis P. Manning, M.D., Ltd. (petitioner corporation). Petitioner corporation's principal place of business was in Huntingdon Valley, Pennsylvania, when the petitions were filed. On July 1, 1981, Drs. Clarke and Gregor also formed *127 their own corporations. Dr. Beres became the sole shareholder of NRI. Drs. Robert Lantieri and Douglas Cole began working as radiologists at Nazareth Hospital around 1982 and 1985, respectively. NRI contracted with Drs. Clarke, Gregor, Lantieri, Cole, and petitioner to perform radiological services during the years in issue. In March 1980, petitioner and Drs. Gregor, Clarke, and Beres formed Nazareth Radiology Associates (NRA), a partnership. NRA operated a computerized tomography (CT) scanner in the radiology department of Nazareth Hospital. From 1981 to 1985 NRA owned one CT scanner. The patient mix for NRI and NRA was approximately one-third private outpatients and two-thirds hospital and emergency room patients. 3. Tax Return Preparation
John Graham (Graham), a certified public accountant, prepared Federal income tax returns for petitioners and petitioner corporation from 1981 through 1985. Petitioner wrote the checks for his corporation. Petitioner gave Graham canceled corporate checks and check stubs, but not club bills or credit card records. At the end of each year, petitioner gave Graham a list of the deductions to claim on his individual return. Graham prepared *128 a cash disbursement summary which showed the amount of petitioner corporation's deductions for the 1981-85 returns. Graham died in 1989. 4. Travel and Entertainment
a. Petitioner's Records
Petitioners' records for travel and entertainment expenses were credit card receipts and other invoices. Petitioner organized his receipts in 1988 and 1989 by sorting them by the category claimed on petitioner corporation's returns (e.g., travel and entertainment, business promotion, and meetings and seminars) for 1982 to 1985. Petitioner had an invoice, credit card receipt, or other supporting document for each claimed expenditure. In most cases, he wrote the names of persons he claims to have entertained or meetings he attended on the back of the invoices. Petitioner made some of the comments at the time of the expenditure, and others sometime from 1986 to 1990. Some of the notations on the receipts give only the name and title (e.g., doctor, technician) of the person claimed to have been entertained and the type of entertainment (e.g., lunch, drinks, or dinner). Some of the receipts state that petitioner discussed work or business or departmental business. Some of the notations name the *129 persons entertained and a purported business purpose such as CT scanner certification or operation, work application, billing, or a medical condition (e.g., diabetes, hypertension, Hodgkin's disease). Petitioner provided his 1982 diary to the revenue agent handling petitioners' audit on August 20, 1987. The revenue agent noted all the entries listed in the diary, and left the diary with petitioners' accountant. On October 2, 1987, the revenue agent reexamined the diary. Petitioner had added entries after August 20, 1987. Most of the additional entries relate to meetings for which petitioners claim automobile expenses. Some of the additional entries relate to hockey tickets, the cost of which petitioner corporation deducted. b. Items Deducted
During each of the years 1981 through 1985, petitioner corporation paid and deducted various personal expenditures of petitioners as business expenses. For 1981, petitioner corporation deducted the cost of chemicals for petitioners' swimming pool and dinner at the Blue Bell Inn with petitioners' daughter. For 1982, petitioner corporation deducted the cost of petitioners' subscription to the Wall Street Journal, repairs to a personal automobile, *130 a hockey game to which petitioner took his daughter's boyfriend, petitioner wife's golf activities at the Huntingdon Valley Country Club (HVCC), and petitioners' birthday party for Kathalyn. For 1983, petitioner corporation deducted the cost of flowers petitioner sent to petitioner wife, petitioner wife's birthday dinner at HVCC, a gin rummy tournament petitioner entered, a $ 2,500 check to petitioner, the caterers at Kathalyn's wedding, firewood delivered to petitioners' home, and tickets to the play "42nd Street". For 1984, petitioner corporation deducted the cost of flowers for petitioners' home, shipping home petitioners' BMW from Germany, a gin rummy tournament, dinner bills signed by petitioner wife, petitioner wife's birthday dinner including purchase of champagne, receipts incurred by persons with no relation to the business, dinner with a person with no connection to petitioners' business, petitioners' New Year's Eve party at the Lobster House, a $ 1,500 check payable to petitioner wife, repairs on a personal automobile, wine purchased in Napa Valley, and merchandise petitioner ordered from the Smithsonian Institution. For 1985, petitioner corporation deducted the cost of *131 flowers petitioners sent to their neighbors and daughter, petitioner wife's birthday dinner, petitioners' Christmas cards, pharmacy expenses, and dentist. Petitioner deducted golf-related expenses at HVCC for each year in issue (e.g., golf bag storage, Golf magazine subscription, petitioner wife's golf handicap fee, and petitioner's golf tournament fee). Petitioner usually played golf with his friends, many of whom were doctors. Petitioner corporation deducted the cost of tickets to the Governor's Ball at HVCC for 1981, 1983, and 1985. Petitioner corporation sometimes deducted the costs of entertaining doctors who petitioners either did not entertain or did not entertain for business purposes. Petitioner wrote on the backs of entertainment receipts and in his business diary that he entertained Dr. Brian Hayes frequently during the years in issue. For example, he wrote Dr. and Mrs. Hayes' names on the back of a number of receipts from DiLullos Restaurant and HVCC and Dr. Hayes' name on a number of other receipts from HVCC and DiLullos (including twice with Dr. Hayes' brother Martin and once with Dr. Gregor) and on receipts from Swallows Restaurant in Cape May, New Jersey, Raven Restaurant *132 in New Hope, Pennsylvania, and two Philadelphia Flyers hockey games. In fact, petitioners entertained Dr. Brian Hayes and his wife socially only three times; once at DiLullos, once at HVCC, and once at a party at petitioners' home. Dr. Hayes has never been to the Swallows or Raven restaurants. He never went with his now deceased brother Martin and petitioner to the HVCC. Dr. Hayes has been to only one Philadelphia Flyers game with his sons, did not attend a Flyers game with petitioner, and has never been out with Dr. Gregor and petitioner together. Petitioners wrote Dr. Brian Hayes' name as a referring physician on some of the entertainment receipts. However, Dr. Hayes does not refer patients to petitioner or his department. Petitioner wrote in his diary that he occasionally entertained Dr. Ernest Gordon in the years in issue. For example, he wrote that he entertained Dr. Gordon at the Lobster House, the Backstage Restaurant, DiLullos, and HVCC. Dr. Gordon and petitioner have been friends since 1965. Dr. Gordon did not recall going to the Lobster House, DiLullos, or HVCC with petitioners during the years in issue, and he has never been to the Backstage Restaurant. Petitioner *133 wrote on the backs of receipts and in his diaries that he entertained Dr. David Schaffer occasionally during the years in issue. Petitioner wrote that petitioners entertained Dr. Schaffer at the Lobster House and the Newport House. However, Dr. Schaffer has never been to the Newport House Restaurant. Dr. Schaffer is an anesthesiologist at Nazareth Hospital and rarely works with petitioner. Petitioner described some persons entertained as "MD", "physician" or "referrer", who were not referrers or doctors. For example, petitioner corporation deducted the cost of flowers sent to Drs. Clarke and Gregor, and Mr. Robert Snyder in 1983, and petitioner wrote on the receipt "poinsettias to referring MDs". Drs. Clarke and Gregor are radiologists in petitioner's radiology group and are not referring MD's. Mr. Snyder is a management consultant and not an M.D. Various comments describe Drs. Schaffer and Leegard as referring MD's when they were anesthesiologists at Nazareth Hospital. Petitioner's comments indicate that he entertained "referring MD" William Muhr in April 1982 when Dr. Muhr was a medical student, and did not refer patients to petitioner. Similarly, petitioner's comments show *134 that he entertained "referring MD" Patrick McNamara on May 7, 1982, and November 12 and 13, 1982, when McNamara was the fiance of Kathalyn and was not a referring MD. Petitioner's comments in 1983 and 1984 describe Dr. Brian Hayes as a "referring MD"; Dr. Hayes did not refer patients to petitioner. From 1981 to 1985 petitioner corporation deducted season tickets to Philadelphia Flyers hockey games. Petitioner occasionally took friends, some of whom were doctors, to the games. Petitioner took his friend, John Smith, to hockey games and petitioner corporation deducted the expense. Petitioner wrote "Dr. J. Smith" as the name of the person entertained on the receipt. Smith was not a doctor or business associate of petitioner. Petitioner corporation deducted all of petitioners' bills for lunches, dinners, and dues at the Vesper Club, HVCC, Ovations, and DiLullos from 1981 to 1985. Petitioners sometimes dined alone at the Vesper Club, HVCC, or DiLullos. Petitioners sometimes took Dr. McNamara and Kathalyn to HVCC or DiLullos for dinner. Petitioner entertained persons not related to business at the Vesper Club and Ovations. 5. Meetings and Seminars
a. General
Petitioner corporation *135 deducted as meetings and seminars expenses the costs of parties held at petitioners' home, including pool parties attended by friends, family, doctors, and staff personnel of Nazareth Hospital, purported gifts for x-ray and CT scanner technicians purchased in St. Thomas, repairs on a Cadillac, payments to the Nazareth Hospital pharmacy and the Smithsonian Institution, dinner with Drs. Lantieri, Clarke, and Chmielewski, payments to Dr. Schwendenson and petitioner wife, and lunch with Dr. Schaffer. b. 1981 Trip -- Europe
Petitioners were in Europe from June 22 to July 5, 1981. Petitioner attended the first 5 days of a convention of the International Society of Radiology in Brussels, Belgium, held from June 24 to July 1, 1981. Petitioner wife went sightseeing in Brussels. After visiting Brussels, petitioners went to Amsterdam and France for a week, where they visited friends. Petitioner corporation deducted the round-trip airfare and all expenses incurred in Brussels by both petitioners, and $ 542.60 for limousine service to and from the airport. c. 1982 Trip -- St. Thomas, Virgin Islands
On January 29, 1982, petitioner wife's birthday, petitioners went to West Palm Beach, Florida, *136 to visit friends. Petitioners went from Florida to St. Thomas, Virgin Islands, on February 4 and returned home around February 14, 1982. While in St. Thomas, petitioner attended a Great Medical Getaways workshop on obstetrical ultrasound. The meeting was held from February 8 to 14, 1982. The record does not show which days petitioner attended. Petitioner corporation deducted expenses for petitioners' trip to St. Thomas, including petitioners' airfare from St. Thomas to San Juan, Puerto Rico, petitioners' meals and hotel expenses in St. Thomas, and a check for $ 188.20 for transportation expenses, which petitioner endorsed to Kathalyn. Petitioners submitted an $ 88.20 receipt for airport parking. Petitioner corporation deducted dinners in St. Thomas where petitioners entertained their friends, Dr. and Mrs. McLaughlin. d. 1982 Trip -- California and Oregon
Petitioner corporation deducted airfare, car rental, and various other expenses for petitioners' travel to Napa, California, and Oregon for 1 week in May 1982. Petitioner attended a 2-day meeting of the American Society of Gastroenterology and played golf at the Silverado Country Club in Napa. Petitioner corporation deducted *137 petitioners' hotel expenses for May 23 to 25 at the Silverado Country Club, and the cost of wine that petitioners purchased in the Napa Valley for home entertaining. Petitioners drove their rental car to Roseburg, Oregon, to attend their daughter's wedding held during the last weekend in May 1982. Petitioner corporation deducted the cost of the rental car. e. 1982 Trip -- New York City
Petitioner attended a seminar on CT scanners at New York University from December 15 to 19, 1982. Petitioner corporation deducted the cost of petitioners' trip. Petitioners deducted the amount of a receipt dated December 10, which is unrelated to the program. f. 1983 Trip -- Hershey, Pennsylvania
Petitioner corporation deducted a May 1983 hotel expense for a board of directors meeting of the Pennsylvania Radiological Society which petitioner attended in Hershey, Pennsylvania. g. 1983 Trip -- Boston, Massachusetts
Petitioner corporation deducted expenses for petitioners' trip to Boston in September 1983. Petitioner attended a CT seminar at Harvard Medical School. Petitioner wife went shopping and sightseeing in Boston. h. 1984 Trip -- Europe
Petitioners were in Europe from approximately March *138 23 to April 19, 1984. In Germany, petitioners took delivery of a new BMW which they had ordered in December 1983. Petitioners spent 3 days in Germany, 1 day in Austria, 2 weeks in Italy, and 1 week in France. Petitioners used the BMW to travel to these countries. Two friends accompanied petitioners sightseeing in Germany. In Germany, petitioner visited the factory of Siemens, a CT scanner manufacturer. Petitioners contacted Siemens in February or March to arrange a factory tour. NRA was considering buying a new CT scanner. Petitioner saw the equipment being considered when he went to the factory. NRA later purchased a Siemens CT scanner. Petitioner could have viewed Siemens' CT scanners in a showroom in the United States. Petitioner corporation deducted various expenses for petitioners' trip, including petitioners' hotel expenses in Munich, Germany, and Innsbruck, Austria. i. 1984 Trip -- California and Oregon
Petitioner corporation deducted petitioners' airfare and other expenses relating to petitioners' trip to Napa, California, and Oregon from September 27 to around October 10, 1984. Petitioner attended a meeting of the Society of Gastrointestinal Radiologists in Napa held *139 from September 29 to October 3, 1984. The record does not indicate which days petitioner attended meetings. Petitioners went to wine shops in California and traveled to Oregon to visit their daughter. j. 1985 Trip -- Florida
Petitioners drove to Florida for a trip that lasted from February 21 to March 12, 1985. Petitioners visited West Palm Beach, Hollywood, Orlando, Busch Gardens, Key West, and Buena Vista, Florida. Petitioner attended a magnetic resonance imaging (MRI) meeting from March 10 to 12, 1985. The meeting was scheduled from March 10 to 14. Petitioner corporation deducted petitioners' driving and lodging expenses to and from Florida. k. 1985 Trip -- North Dakota
Petitioners went to North Dakota in October 1985. Petitioner corporation deducted petitioners' airfare, $ 80 for limousine service to the airport, and the cost of petitioners' rental car in North Dakota. Petitioner wife's father lived in Bismarck, North Dakota, during the years in issue. Petitioners visited petitioner wife's father in Bismarck from October 7 to 13. Petitioner corporation deducted petitioners' expenses incurred in Bismarck. Petitioner attended a meeting at the University of North Dakota *140 in Grand Forks, North Dakota, on October 12. The meeting lasted less than 3 hours, and preceded the homecoming football game. The meeting concerned rural health organizations, plasma levels and effects in rheumatoid arthritis, impact of day care on infectious diseases in children, lung cancer -- diagnosis and treatment, and the fetal brain. l. 1985 Trip -- Maine and Massachusetts
Petitioners drove to Boston, Massachusetts, and Maine from October 15 to 19, 1985. Petitioner corporation deducted the trip expenses. Petitioner attended a seminar on angiography and interventional radiology at Harvard Medical School held from October 15 to 18, 1985. Petitioner wife went shopping and sightseeing in Boston. Petitioner corporation deducted $ 143 paid to New England Sights for sightseeing in Boston by a check signed by petitioner wife. After the meeting, petitioners drove to Maine. Petitioner corporation deducted petitioners' expenses in Boston and Maine. m. 1985 Trip -- Chicago
Petitioners were in Chicago from November 16 to 20, 1985. Petitioner attended two seminars for a total of 3 hours at a meeting of the Radiological Society of North America (RSNA) on November 18 and 19, 1985. *141 The RSNA meeting lasted for a week. Petitioner corporation deducted petitioners' airfare, hotel, and other expenses for this trip. 6. Automobile Expenses
Petitioner corporation deducted automobile insurance premiums and automobile depreciation for 1982 to 1985. The record does not show which vehicles were insured by these premiums, or for which vehicles petitioner corporation claimed depreciation. Petitioners' Cadillac, Datsun 280-ZX, and two BMW's were insured for personal use for 1981 through 1985. Petitioner corporation deducted 90 percent of petitioners' gasoline and repair expenses from 1982 through 1985 for automobiles owned by petitioners, including repairs for petitioner wife's Cadillac and Datsun, Kathalyn's car, and BMW expenses in Germany. Petitioner corporation deducted expenses for rental cars from Foy Buick and Sheehy Ford when petitioners' car was in for repairs. Petitioner corporation deducted expenses for 1982 to 1985 for a 1982 Datsun 280-ZX, two 1984 BMW's, a Cadillac, and other automobiles. Petitioners submitted their automobile expense receipts for 1981 to 1985 to their accountant to use in preparing the corporate returns. Some of the invoices name petitioner *142 wife or Kathalyn as the customer. Petitioner wife signed petitioner's name on some of the gasoline receipts. Petitioner corporation submitted to the accountant (Graham) a travel log petitioner prepared in 1986 or later during the audit of petitioners' 1982 return which purports to reconstruct automobile expenses and the mileage for travel in 1982 to business lunches and dinners and to meetings in Philadelphia and New York City. The log does not describe the business purpose of the meetings and was not made contemporaneously. Petitioner corporation deducted the following personal expenses of petitioners or members of their family: (a) Automobile gasoline expenses in Pennsylvania while petitioners were in St. Thomas, Virgin Islands, in 1982; (b) gasoline expenses in Philadelphia and Wilkes-Barre, Pennsylvania, while petitioners were in Oregon in 1982 (Kathalyn attended college in Wilkes-Barre during this time); (c) petitioners' gasoline expenses from 1982 to 1985 traveling to their vacation home in Cape May; (d) gasoline expenses in Pennsylvania and Clostoga, New Jersey, while petitioners were in Oregon and Napa Valley, California, in 1984; (e) gasoline expenses in traveling from California *143 to Oregon for petitioners' daughter Barbara's wedding in 1982; and (f) gasoline expenses while visiting their daughter Kathalyn in Houston, Texas, in 1984. Petitioner corporation claimed an investment tax credit of $ 1,878 for a $ 31,310 BMW automobile purchased in April 1984. 7. Disability and Life Insurance Expenses
Petitioner corporation deducted disability and life insurance premiums paid from 1982 through 1985. The disability insurance provided for continuation of petitioner's income but not for overhead expenses of petitioner corporation. The use of disability proceeds was not restricted to a business purpose. Petitioners did not include petitioner corporation's payment of disability insurance as compensation in any year in issue. Petitioner corporation had a $ 50,000 group term life insurance policy on petitioner's life. The record does not include the name of the beneficiary of the life insurance. B. Individual Petitioners
1. Charitable Contributions
In 1983 petitioners paid $ 200 to Holy Redeemer Hospital to enter a golf tournament. Petitioners donated used clothing to Abbie's Thrift Shop for the benefit of Abington Memorial Hospital in 1983, 1984, and 1985. Petitioner *144 corporation paid a $ 200 deposit for a wheelchair for petitioner wife's mother in January 1983. Petitioners donated the wheelchair to Nazareth Hospital on June 15, 1983, and deducted $ 500. St. Hillary's Church is in Rydal, Pennsylvania. Petitioner wife's mother, Barbara Beadles, who died in 1983, attended the Church of the Immaculate Conception in Jenkintown, Pennsylvania. Petitioners deducted cash contributions to St. Hillary's Church and the Church of the Immaculate Conception totaling $ 2,500 in 1983, $ 2,000 in 1984, and $ 2,500 in 1985. These churches have no record of these contributions. Father John Glynn has been pastor at St. Hillary's since 1979. He generally said the masses during the week and on Sundays from 1981 to 1985. Father Glynn did not recall seeing petitioner wife at any mass before 1991. He first met petitioner wife around the time of the trial of this case when she introduced herself to him after a mass. He first met petitioner 1 month before trial at the Huntingdon Valley Country Club. St. Hillary's had no daily collection plate during those years. Father Glynn counted the collection in the plate after Sunday masses. He did not notice any recurring *145 contributions of $ 20 or more in the collection plate during the years at issue. Father Conohan, pastor of the Church of the Immaculate Conception since 1988, presides over at least one mass daily and Sunday masses and knows the people who attend the smaller daily masses. He does not know petitioner wife. The church collection plate is passed only on Sundays. 2. Clinton Avenue Property
On October 1, 1982, petitioners and their son Miles and his wife jointly purchased a residential apartment building at 300 Clinton Avenue, Brooklyn, New York. Miles and petitioner agreed that petitioner would pay for improving the building and Miles would live in and manage it. Petitioner paid Miles for managing the construction of the Clinton Avenue property in the summer and fall of 1984. Miles hired an attorney in 1986 to seek additional payment from petitioner for his work on the property during the years at issue. Through the efforts of the attorney, Miles received $ 10,000 from petitioner in 1986 or 1987. Petitioners placed in service and rented the Clinton Avenue property on April 2, 1984. Most of the rehabilitation work was completed in April 1984. All work was finished by September 1984. *146 The parties agree that, if the credit is allowable, petitioners made qualified rehabilitation expenditures for the Clinton Avenue property of $ 109,910.53 in 1983 and $ 66,448.01 in 1984, totaling $ 176,358.54. Petitioners depreciated the shell of the Clinton Avenue building on their 1982 to 1985 returns, but did not claim a rehabilitation credit. Petitioners used different methods to depreciate the shell of the building and the rehabilitation expenses. They depreciated the shell of the building, starting October 1, 1982, over a 15-year life using ACRS with cost recovery percentages of 3 percent for 1982, 11 percent for 1983, 10 percent for 1984, and 9 percent for 1985. Petitioners claimed depreciation of $ 30,452.15 on $ 121,808.58 of rehabilitation expenses on the Clinton Avenue property using the straight-line method and a 25-percent recovery rate for 1983 through 1985. For 1984 and 1985, petitioners claimed depreciation of $ 22,717.37 on rehabilitation expenses of $ 90,869.49, using a 25-percent recovery rate. 3. Old Spanish Trail Property
Kathalyn and Patrick McNamara (the McNamaras) met in 1977 and married in May 1983. They moved to Houston in June 1983 where Patrick McNamara *147 began a medical residency at Baylor College of Medicine. In late 1983, the McNamaras decided they wanted to own a home rather than rent. On August 31, 1984, they bought a condominium unit at 2300 Old Spanish Trail, #1129, Houston, Texas (Old Spanish Trail property), financed by a mortgage on which they were the sole obligors. Petitioner told his tax attorney, William O'Neill (O'Neill), that he wanted to "take over" financing and lease the Old Spanish Trail property to the McNamaras and generate tax deductions for petitioners. O'Neill advised him that an installment land contract and leaseback would accomplish this. As a result, petitioners and the McNamaras agreed that petitioners would pay the monthly mortgage ($ 830) and other expenses of the property, and the McNamaras would pay petitioners $ 700 a month. Petitioners deducted the mortgage payments, rental expenses, and depreciation in 1984 and 1985 for the Old Spanish Trail property. The McNamaras did not deduct these amounts. Petitioners paid rental expenses of $ 1,959.07 in 1984 and $ 12,454.97 in 1985. Both Kathalyn and Dr. McNamara knew about and agreed to the arrangement. Kathalyn and Dr. McNamara referred to the payments *148 to petitioners as rent, even though they believed they had not relinquished ownership of the property to petitioners. The McNamaras did not inform the mortgagee of any sale of the Old Spanish Trail property. The installment sales agreement was not filed with the Recorder of Deeds in Texas. In February 1986, O'Neill sent petitioners an unsigned installment sales contract and lease. Later, petitioner signed the installment sales agreement and dated it September 1, 1984. He mailed it and the lease to the McNamaras in Houston. Kathalyn signed her and her husband's names on the document. Eileen Goodwin is a technician at Nazareth Hospital who worked with petitioner. Her name appears on the installment agreement as a witness, but she did not witness any of the signatures. The McNamaras separated in March 1987 and were divorced on November 1, 1987. The circumstances immediately leading to the divorce caused extreme acrimony between Dr. McNamara and petitioners, which continued through the time of the trial. Petitioner stopped paying the mortgage on the Old Spanish Trail property when the McNamaras separated without Dr. McNamara's or petitioner's taking any action with respect to *149 the installment sales agreement. The McNamaras' November 1, 1987, divorce decree awarded the Old Spanish Trail property to Dr. McNamara. Kathalyn signed a deed relinquishing her interest in the property on December 14, 1987. In 1988 petitioner wrote to O'Neill asking for signed copies of the installment agreement and lease. O'Neill sent petitioners a copy of the unsigned documents stating he had never seen signed documents. 4. Petitioners' and Petitioner Corporation's Tax Returns
Respondent determined that petitioners received constructive dividends in 1981 from petitioner corporation for its payment of their personal expenses. Respondent included in petitioners' income for 1981 a deemed capital gain distribution of $ 21,070 attributable to certain disallowed expenses deducted by petitioner corporation in 1981. Petitioner corporation filed a Form 1120 for 1981. Petitioner corporation did not execute a Form 872, Consent to Extend the Time to Assess Tax, for 1981. OPINION Deductions are a matter of legislative grace, and a taxpayer has the burden of establishing entitlement to a deduction. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); Welch v. Helvering, 290 U.S. 111, 115 (1933). *150 Taxpayers are required to maintain records which are sufficient to substantiate claimed deductions and credits. Sec. 6001. Under certain circumstances, where a taxpayer has inadequate records to substantiate claimed deductions, we estimate the amount of the expenses. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). However, to make an estimation, there must be sufficient evidence to show that at least the amount allowed in the estimate was spent or incurred for the stated purpose. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). In making an estimate, we may bear heavily on a taxpayer "whose inexactitude is of his own making." Cohan v. Commissioner, supra at 544. A taxpayer may deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Sec. 162(a). Personal living expenses are not deductible. Sec. 262. Corporate shareholders who use corporate property for personal purposes or for whom the corporation pays personal expenses are charged with additional distributions from the corporation, taxable to them as constructive dividends to the extent of the corporation's earnings and profits. Ireland v. United States, 621 F.2d 731, 735 (5th Cir. 1980); *151 Commissioner v. Riss, 374 F.2d 161, 166-167, 170 (8th Cir. 1967), affg. in part and revg. in part T.C. Memo. 1964-190; Melvin v. Commissioner, 88 T.C. 63, 79 (1987), affd. per curiam 894 F.2d 1072 (9th Cir. 1990); Challenge Mfg. Co. v. Commissioner, 37 T.C. 650, 663 (1962). In addition, the corporation may not deduct personal expenses of its shareholders or expenses of owning property attributable to personal use by its shareholders. United Aniline Co. v. Commissioner, 316 F.2d 701, 705 (1st Cir. 1963), affg. T.C. Memo. 1962-60; Melvin v. Commissioner, supra.
If a corporation provides property for or pays personal expenses of employees in their capacity as such, the employees are charged with additional income in the form of constructive wages or salary, and the corporation is entitled to a corresponding deduction. Secs. 61(a)(1), 162(a)(1). Whether personal use of corporate property is, e.g., constructive dividends or constructive wages is a question of fact. Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1242 (5th Cir. 1978); Goldstein v. Commissioner, 298 F.2d 562, 566 (9th Cir. 1962), affg. T.C. Memo. 1960-276. The corporation has the burden of establishing that personal *152 use of corporate property is additional wages or compensation. Motel Co. v. Commissioner, 340 F.2d 445, 449 (2d Cir. 1965), affg. T.C. Memo. 1963-174; Melvin v. Commissioner, supra at 80. A. Petitioner Corporation
1. Travel and Entertainment Expenses
Petitioner corporation claimed travel and entertainment deductions for 1982, 1983, and 1984, most of which respondent disallowed. Respondent's determination is presumed to be correct and petitioner corporation bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). To deduct entertainment expenses, petitioner corporation must show that the expenses are "directly related" to the business. Sec. 274(a); sec. 1.274-2(c)(3), Income Tax Regs. For an expense to be directly related to the active conduct of a business the taxpayer must have had more than a generalized expectation of deriving income or a specific business benefit at some indefinite future time from those entertained. Walliser v. Commissioner, 72 T.C. 433, 441 (1979). The entertainment expense must also satisfy the substantiation requirements of section 274(d). To deduct travel and entertainment expenses, the taxpayer must substantiate *153 by adequate records or by sufficient evidence corroborating his own testimony the amount of the expense, the time and place of the travel or entertainment, the business purpose of the expense or trip, and the business relationship of the persons entertained to the taxpayer. Sec. 274(d). a. Petitioners' Records
Petitioners introduced into evidence summaries of their travel and entertainment expenses and corresponding invoices or receipts. There was a supporting document for each expenditure on the schedule. Petitioner testified that he usually entered the names of persons entertained or the business purpose on the backs of most of the invoices or receipts at the end of each month. These documents contain many inconsistencies and improbabilities. Petitioner later admitted that he added many of the comments on the backs of receipts between 1986 and 1990. A statement not recorded at the time of the expenditure has little probative value. Sec. 1.274-5(c)(1) and (2)(ii)(a), Income Tax Regs. Petitioner argues that respondent knew that petitioner added many comments to the backs of receipts in 1986-90. However, during the stipulation process and continuing until the time of trial, *154 petitioner represented that the entries on these documents were made contemporaneously (within a month or two) of the expense. Although respondent was aware that petitioner made comments on the "backers" when he affixed the receipts, petitioner did not tell respondent that he did not make the notations on the backs of the receipts contemporaneously. We find petitioner's contention to be specious. Petitioner misrepresented when he made many of the notations on the receipts; it is evident that the comments on the backers were not made contemporaneously since petitioner prepared the backers years after the entertainment occurred. b. Meals at Restaurants and HVCC
Respondent argues that these expenses were either petitioners' personal expenses or that they should be disallowed because petitioners have not shown that they were directly related to or associated with the active conduct of petitioner corporation's business. Respondent further argues that petitioners did not keep adequate records as required by section 274(a) in that many of the receipts list only the names of the persons allegedly entertained, and not the business purpose for the entertainment. Petitioner corporation has *155 not shown that it has met the requirements of section 274(d) for its entertainment expenses. Petitioner testified that the entertainment was to generate patient referrals and goodwill, and that medical topics were usually discussed. A taxpayer's general testimony that business was always discussed during the entertainment is not sufficient to establish a business purpose. Handelman v. Commissioner, 509 F.2d 1067, 1074-1075 (2d Cir. 1975), revg. and remanding T.C. Memo. 1973-57; Rutz v. Commissioner, 66 T.C. 879, 884 (1976). "Shop talk" is not a business purpose. Leon v. Commissioner, T.C. Memo. 1978-367. Petitioner corporation deducted all of petitioner's lunches, dinners, and golf with other doctors because "some topic related to medicine" was always discussed. The fact that another doctor was present, or that there was a general discussion of medicine, does not establish a business purpose directly related to petitioner's radiology practice. Many of the doctors who testified stated that petitioner either exaggerated about entertaining them, or that the entertainment was purely social. Petitioners have not shown a substantial and bona fide business discussion preceding, during, *156 or following any of the claimed entertainment. Sec. 1.274-2(d)(1)(ii), Income Tax Regs. We conclude that these items represent nondeductible personal expenses, and that petitioner corporation has not shown that the entertainment was directly related to or associated with the active conduct of its business. Respondent's disallowance of petitioner corporation's travel and entertainment expenses is sustained. c. Business Gifts
Petitioners argue that petitioner corporation purchased wine for approximately $ 270 in Napa, California, for business entertaining in their home, and as gifts to doctors who referred business to petitioner. Petitioner corporation has failed to prove entitlement to deductions for business gifts. Sec. 274(b). The deductibility of business gifts is limited to $ 25 per donee per year. Sec. 274(b)(1). To substantiate a deduction for business gifts, the taxpayer must establish: (1) The cost, date, description, and business purpose of the gift; and (2) the taxpayer's business relationship with the person receiving the gift. Sec. 274(d). Petitioners have not established to whom the gifts were given, the business relationship of the donee to petitioner corporation, *157 or the cost of each gift. We conclude that petitioner corporation failed to meet the requirements of section 274(d) for the business gifts. We sustain respondent's determinations. 2. Meetings and Seminars Expenses
Under section 162(a)(2), a taxpayer is allowed to deduct ordinary and necessary travel expenses paid while away from home in the pursuit of business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946); Walliser v. Commissioner, 72 T.C. 433, 437 (1979). Travel expenses include travel fares, meals, lodging, and incidental expenses. Sec. 1.162-2(a), Income Tax Regs. To be deductible under section 162, a travel expense must also meet the substantiation requirements of section 274(d). Where a taxpayer travels to a domestic destination for both business and personal activities, travel expenses to and from the destination are deductible only if the trip is related primarily to the taxpayer's business. If the purpose of the trip is primarily personal, the travel expenses to and from the destination are not deductible even though the taxpayer engages in some business activities at the destination. Duncan v. Commissioner, 30 T.C. 386, 390-391 (1958); sec. 1.162-2(b)(1), Income Tax Regs. *158 However, bona fide business expenses at the destination are deductible even though the travel expenses to and from the destination are not. Sec. 1.162-2(b)(1), Income Tax Regs. Whether a trip is related primarily to the taxpayer's business or is primarily personal is a question of fact. Commissioner v. Flowers, supra at 470; sec. 1.162-2(b)(1), Income Tax Regs. A casual connection to one's business does not make the cost of the trip a business expense. Ballantine v. Commissioner, 46 T.C. 272, 279-280 (1966). Section 274(c) requires the proration of foreign travel expenses between business and nonbusiness expenses. A taxpayer may deduct foreign convention expenses by showing that: (1) The meeting attended was directly related to the active conduct of the taxpayer's trade or business, and (2) it was as reasonable for the meeting to be held outside the North American area as within the North American area. Sec. 274(h). Petitioner corporation claimed meetings and seminars expense deductions from 1982 to 1985, most of which respondent disallowed. Respondent argues that petitioners' principal purpose for each seminar or convention was personal, and that petitioner corporation's payment *159 of petitioners' personal expenses was not an ordinary and necessary business expense. While the record supports a finding that petitioners' principal purpose for many of the trips was personal, we find that some of the trips had a principal business purpose, as discussed below. Where a taxpayer's spouse accompanies him on a business trip, expenses attributable to her are nondeductible unless her presence on the trip serves a bona fide business purpose. Stratton v. Commissioner, 448 F.2d 1030, 1034 (9th Cir. 1971), revg. on another issue 52 T.C. 378 (1969); Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 661 (1962); Moorman v. Commissioner, 26 T.C. 666, 679-680 (1956). Petitioner wife generally accompanied petitioner on these trips. However, petitioners have not convinced us that her presence served any business purpose. Her activities were those typical of a vacation, such as sightseeing and shopping. Thus, we hold that no expenses attributable to petitioner wife are deductible for any of these trips. a. 1981 -- Brussels Trip
Petitioners traveled to Brussels, Belgium, on June 22, 1981, and returned to the United States on July 5, 1981. Petitioner attended the International *160 Congress of Radiology for 5 days during this trip. We find that petitioner's attendance of this meeting was primarily for business. The corporation may deduct his (but not petitioner wife's) expenses in Brussels, and the allocable portion of his transportation expenses to and from Brussels. Sec. 274(c). b. 1982 -- St. Thomas, Virgin Islands
On January 29, 1982, petitioners flew to Florida to stay with friends and then went to St. Thomas where a medical meeting was being held. Petitioner corporation deducted petitioners' entertainment of their friends, the McLaughlins, in St. Thomas. Petitioner has not convinced us that this trip had a primary business purpose. Petitioners offered no syllabus of the meetings. Petitioners introduced a document which stated that there was a program in obstetrical ultrasound in St. Thomas, but it gives no other information. We find that this trip was primarily personal. c. 1982 Trip -- California and Oregon
Petitioner attended a 2-day meeting of the American Society of Gastroenterology and played golf at the Silverado Country Club in Napa, California, in 1982. Petitioners rented a car and drove to Oregon for their daughter's wedding, and later *161 flew home. Petitioner corporation deducted the airfare, rental car, gasoline expenses in Oregon and California, and all other expenses in California. The trip lasted 2 weeks. Petitioner did not testify about the business purpose of this trip other than to say he attended a 2-day meeting. Petitioners have no documentation about the meeting. We conclude that the primary purpose of this trip was personal. d. 1982 Trip -- New York City
Petitioner corporation deducted petitioner's expenses for a CT meeting in New York City on its 1983 return. We find that this trip was primarily business related. However, the December 10 expense is not deductible. e. 1983 Trip -- Hershey, Pennsylvania
Petitioner attended a meeting of the Pennsylvania Radiology Society in Hershey, Pennsylvania, in 1983. Petitioner corporation deducted the expenses of travel and hotel for this meeting. We find that this trip was primarily business related. The record is unclear whether anyone attended with petitioner. He testified he went alone. The hotel bill shows two people stayed in his room, but the record does not show whether the room rate was the same with one or two guests. Any expenses not attributable *162 to petitioner are not deductible. f. 1983 Trip -- Boston, Massachusetts
Petitioner corporation deducted various expenses relating to a CT meeting at the Harvard Medical School in Boston in 1983. We find that this trip was primarily business related. g. 1984 Trip -- Europe
Petitioners and two friends went to Europe for almost 4 weeks in March and April 1984. Petitioner testified that the primary purpose of the trip was to view the Siemens factory in Germany because NRA was planning to buy a CT scanner. Petitioner testified that he combined the factory visit, the purchase of a BMW, and a vacation, and that petitioner corporation did not deduct expenses of the trip after petitioner visited the Siemens factory. Petitioner testified that it was important for him to inspect the Siemens plant and facilities and discuss CT scanning equipment in Germany rather than in the United States, where they could not view the latest technology, but admitted that he could view Siemens' CT scanners at a U.S. showroom. Petitioner claims that Siemens wanted him to come to the factory. However, Siemens did not write petitioner to make arrangements for his factory visit until after he contacted them, *163 and after he had arranged to take delivery on a new BMW in Germany. We conclude that petitioner arranged the plant visit in an attempt to justify deducting some costs of the vacation. We conclude that petitioners' primary purpose in traveling to Europe was for a vacation and to take delivery of the BMW, and that petitioner corporation may not deduct any expenses of the trip. Duncan v. Commissioner, 30 T.C. 386, 390-391 (1958). h. 1984 Trip -- California and Oregon
Petitioners traveled to the Napa Valley in 1984 to attend a 5-day meeting of the Society of Gastrointestinal Radiologists. Petitioner corporation deducted petitioners' airfare, all Napa Valley expenses, and gas expenses in California and Oregon. Petitioners did not convince us that this trip was primarily business related. i. 1985 Trip -- Florida
Petitioners were in (or en route to and from) Florida from February 21 to March 12, 1985. Petitioner attended MRI meetings for 3 days. Petitioner offered no syllabus or other documents explaining the meeting. We find that the primary purpose for this trip was personal. j. 1985 Trip -- North Dakota
In October 1985, petitioners flew to North Dakota for 1 week to visit petitioner *164 wife's father and to attend homecoming weekend at the University of North Dakota, which included a medical meeting lasting less than 3 hours. Petitioner did not convince us that the topics discussed related to his radiology practice. This trip was primarily personal. k. 1985 Trip -- Maine and Massachusetts
During October 15 to 19, 1985, petitioners traveled by car to Massachusetts and Maine. Petitioner attended a radiology meeting at Harvard and went to Maine for a personal side trip. Petitioner corporation deducted all of the expenses incurred in Maine. We find that the trip to Massachusetts was primarily business related, and that petitioner corporation may deduct petitioner's expenses in Boston and an allocable fraction of his travel expenses. l. 1985 Trip -- Chicago
Petitioners were in Chicago, Illinois, from November 16 to 20, 1985. It appears from petitioners' documents that the only meetings petitioner attended were from 8:30 a.m. until 10 a.m. on the 18th and 19th. Petitioner testified that, although the backs of various receipts list the dates of his attendance at the Chicago meetings as November 17 through 21, 1985, he may not have attended all those dates. Petitioners *165 provided no documentation about the meetings. Petitioners have not convinced us that their primary purpose in taking this trip was related to business. m. Temple University
In 1984 and 1985 petitioner corporation deducted $ 24, $ 50, and $ 25 paid to Temple University. The faces of the checks do not indicate the purpose of the payments. Initially petitioner stated he attended meetings, but he submitted no proof of any meetings. Later he testified that he was unsure if the payments to Temple University were for meetings or donations to the residents' x-ray library in the Department of Radiology. Petitioner corporation has failed to establish that the payments were for a business purpose. Accordingly, respondent's determination is sustained. 3. Automobile Expenses and Depreciation
Petitioner claims that only 10 percent of his automobile use was personal and that bills deducted for gasoline expenses and repairs are consistent with 10 percent personal use. Petitioner submitted a detailed travel log he prepared in 1986 or later purporting to show his travel in 1982 (3,150 miles) to business lunches and dinners, meetings of professional organizations, and meetings at hospitals in *166 Philadelphia and New York City. Petitioners argue that the 1982 estimate should also apply to 1983, 1984, and 1985. Petitioner testified that his only business automobiles were a Cadillac in 1981, a Datsun 280ZX in 1982 and 1983, a BMW 733iA in 1983, and a BMW 735CSI in 1984 and 1985. However, petitioner corporation also deducted expenses for a Cadillac, Chevrolet, and Oldsmobile in the years in issue after 1981. Petitioner corporation deducted personal automobile expenses of petitioner wife and petitioners' daughter, neither of whom had a business connection to petitioner corporation. At trial petitioner said he used all of his cars to some extent for business. Petitioners have not convinced us that they used the automobiles for business in the years in issue. Even if they did, we will only estimate the amount of business use if petitioners provide us with a means of making a reasonable estimate. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Petitioner's log was not made contemporaneously, and we give it little weight. Petitioner used the corporate-owned automobiles to commute to work and to drive to lunches and dinners that he failed to show were business related. *167 Petitioner wife used the automobiles for personal purposes. Petitioner corporation has not given us a sufficient basis to estimate how much of these expenses have business purpose. Accordingly, respondent's determination as to this issue is sustained. Petitioner corporation argues that petitioner's automobile expenses for driving to the hospital when he was on 24-hour emergency call are deductible business expenses, rather than nondeductible commuting costs. We disagree. Transportation costs incurred by a physician in driving from home to a hospital on emergency calls or otherwise outside of regular business hours are nondeductible commuting costs. Sheldon v. Commissioner, 50 T.C. 24, 27 (1968); Russo v. Commissioner, T.C. Memo. 1983-324; Gwinner v. Commissioner, T.C. Memo. 1975-270; see also Green v. Commissioner, 59 T.C. 456, 458-460 (1972). In addition, the record does not show whether petitioner ever had to go to the hospital on an emergency. The record does not show for which automobiles petitioner corporation deducted insurance. Petitioner corporation bought nonbusiness automobile insurance for its cars, but petitioner argues that it did this on the advice of his insurance *168 agent, Mr. Christian. We hold that petitioners have not shown that petitioner corporation may deduct any portion of the amount paid for automobile insurance. 4. Life Insurance Expenses
Petitioner corporation deducted life insurance payments of $ 492 in 1983, 1984, and 1985. No deduction is allowed for premiums paid on a life insurance policy covering the life of an officer or employee when the taxpayer is directly or indirectly a beneficiary under the policy. Sec. 264(a)(1). Petitioner corporation did not show that it is not directly or indirectly a beneficiary under the life insurance policy on petitioner's life. Thus, we sustain respondent's determination on these issues. 5. Net Operating Losses
Respondent determined that petitioner corporation was not entitled to net operating losses for 1982 through 1985 because respondent's adjustments to petitioner corporation's net income eliminated the claimed net operating losses. Petitioner corporation offered no evidence to meet its burden on this issue. Accordingly, we sustain respondent's determination on this issue. 6. Investment Tax Credit
An investment tax credit is allowed in the year in which qualifying property is placed *169 in service by the taxpayer. Secs. 38(a), 46(a)(1) and (2), (c)(1). The investment tax credit is limited to property which is depreciable and has a useful life of 3 years or more. Sec. 48(a)(1). To be eligible for an investment tax credit, property must be used in a trade or business. Secs. 48(a)(1), 168(c). Petitioner corporation purchased a BMW in April 1984. [2] Petitioner corporation's 1984 return reports the investment of $ 31,310 in 3-year property and an investment credit of $ 1,878. Petitioner claims that he used the BMW in his business of being an employee of petitioner corporation. However, petitioner offered no evidence regarding his business use of the automobile. If the BMW was not used in petitioner corporation's trade or business, petitioner corporation would not be entitled to depreciate it. Sec. 167(a). If depreciation on the BMW is not allowed, the automobile does not qualify as section 38 property, and no investment credit is allowable. See *170 Bloomberg v. Commissioner, 74 T.C. 1368, 1372-1373 (1980). We hold that petitioner has not shown he used the BMW in petitioner corporation's business. Therefore, petitioner corporation is not entitled to an investment credit in 1984. 7. Corporate Distributions and Earnings and Profits
Petitioners argue that petitioner corporation's earnings and profits should be adjusted for accrued taxes and penalties in determining any taxable dividend or capital gain to petitioners. Petitioners claim that a cash method taxpayer, such as petitioner corporation, may reduce its earnings and profits by accrued but unpaid taxes, citing Demmon v. United States, 321 F.2d 203 (7th Cir. 1963); Drybrough v. Commissioner, 238 F.2d 735 (6th Cir. 1956), remanding United Mercantile Agencies, Inc. v. Commissioner, 23 T.C. 1105 (1955); Hadden v. Commissioner, 49 F.2d 709 (2d Cir. 1931), revg. 17 B.T.A. 956 (1929). Petitioners' reliance on this line of cases is misplaced.[3] In Webb v. Commissioner, 67 T.C. 1008, 1019 (1977), we stated that after the Court of Appeals for the Eighth Circuit's reversal of our opinion in Alworth Trust v. Commissioner, 46 B.T.A. 1045 (1942), revd. sub nom. Helvering v. Alworth Trust, 136 F.2d 812 (8th Cir. 1943), *171 we have consistently followed that reversal and have not allowed cash method taxpayers to reduce their earnings and profits on account of accrued but unpaid taxes. Webb v. Commissioner, supra at 1019; see also Ferguson v. Commissioner, 47 T.C. 11, 31-34 (1966); United Mercantile Agencies, Inc. v. Commissioner, 23 T.C. 1105, 1114-1115 (1955), remanded sub nom. Drybrough v. Commissioner, 238 F.2d 735 (6th Cir. 1956); Dean v. Commissioner, 9 T.C. 256, 266-267 (1947), affd. on other grounds 187 F.2d 1019 (3d Cir. 1951); Mazzocchi Bus Co. v. Commissioner, T.C. Memo. 1993-43. In Webb, 67 T.C. at 1019-1021, we addressed the cases upon which petitioners rely. We concluded: All accrued but unpaid expenses represent a realistic and economic cost to a cash method corporation, but no reason has been advanced in any of the cases for treating accrued taxes differently from other accrued but unpaid expenses. The decisions that have treated taxes differently are not persuasive because they were either decided under a statutory and regulatory scheme different from that now in existence, or their rationale was based upon certain fallacies. * * * [Id. at 1019; fn. ref. omitted.]
Accordingly, we hold *172 that petitioner corporation may not reduce its earnings and profits by accrued but unpaid tax liabilities. B. Individual Petitioners
1. Charitable Contributions
Section 170 allows a deduction for charitable contributions subject to certain limitations. Petitioners bear the burden of proving both that the contribution was made and its fair market value. Rule 142(a); Zmuda v. Commissioner, 79 T.C. 714, 726 (1982), affd. 731 F.2d 1417 (9th Cir. 1984). Petitioner paid $ 200 to Holy Redeemer Hospital for a golf tournament in 1983. Petitioner offered no explanation as to what portion of this charge was attributable to a charitable contribution, and thus we have no basis to allow a deduction for any of this amount. Petitioners deducted donations of used clothing to Abbie's Thrift Shop for the benefit of Abington Hospital in 1983, 1984, and 1985 and received letters of acknowledgement of the gifts from Abbie's Thrift *173 Shop. We conclude that the value of petitioner's items donated to Abbie's Thrift Shop is $ 50 in 1983, $ 175 in 1984, and $ 250 in 1985, and that petitioners may deduct those amounts. Petitioners deducted $ 500 for a wheelchair donated to Nazareth Hospital in 1983, and testified that they paid a total of $ 500 for it. The only documentation of its cost was a check for $ 200 paid by petitioner corporation. Since the corporation paid the $ 200, we are not convinced petitioners are entitled to any deduction for the contribution. Herring v. Commissioner, 66 T.C. 308, 312 (1976). We conclude that petitioners are not entitled to a charitable deduction for the wheelchair. Petitioners claim that petitioner wife gave two Catholic churches an average of $ 50 per week, totaling $ 2,250 in 1983, $ 2,000 in 1984, and $ 2,250 in 1985. Petitioner wife testified that during the years in issue and until the time of trial, she frequently attended St. Hillary's or the Church of the Immaculate Conception on Sundays, holy days of obligation, during Lent, and daily during the Desert Storm crisis. Petitioner wife stated that she gave "whatever she had" to the collection plate, even at daily masses. *174 However, both churches only had Sunday collections. Petitioner wife's testimony is not believable. If she had attended church on weekdays, she would have known the only collection plate was on Sundays. Father Glynn of St. Hillary's knew all the faces of those who regularly attended daily and Sunday mass, and petitioner wife was not one. Father Conohan, pastor of the Church of the Immaculate Conception since 1988, presides over at least one mass daily and Sunday masses and knows the people who attend the smaller daily masses. He does not know petitioner wife, even though she claimed that she attended the daily masses during the years he was there. This impeaches her testimony about her church attendance and contributions for the years at issue. Petitioners did not substantiate their claimed cash contributions to the church. They rely entirely on petitioner wife's testimony. Accordingly, we sustain respondent's determination. 2. Clinton Avenue Property
Respondent argues that petitioners are not entitled to the rehabilitation credit for the Clinton Avenue property because they did not elect to depreciate the rehabilitation expenditures under an approved straight-line method described *175 in section 168(b)(3) on their 1983 and 1984 returns. "Qualified rehabilitation expenditures" include only expenses with respect to which an election to use the straight-line method of depreciation has been made under section 168(b)(3). Sec. 48(g)(2)(B)(i); DeMarco v. Commissioner, 87 T.C. 518, 522 (1986), affd. without published opinion 831 F.2d 281 (1st Cir. 1987). We are not convinced that petitioners elected a permissible straight-line method under section 168(b)(3) for their 1983 and 1984 rehabilitation expenditures. Knight-Ridder Newspapers v. United States, 743 F.2d 781, 793-797 (11th Cir. 1984); Atlantic Veneer Corp. v. Commissioner, 85 T.C. 1075, 1082-1083 (1985), affd. 812 F.2d 158 (4th Cir. 1987). On their 1983 return, petitioners depreciated these expenditures on a straight-line basis at a 25-percent rate (4 years). Petitioners also used a 25-percent recovery rate in 1984. Four-year straight-line recovery was not permitted under section 168(b)(3) in 1983 and 1984. Components of section 1250 property must be depreciated using the same method as used for the building itself. Sec. 168(f)(1). Components include all rehabilitation expenses incurred within 3 years of the *176 taxpayer's placing the building in service. DeMarco v. Commissioner, supra at 523 n.6; Au v. Commissioner, T.C. Memo. 1990-203. A taxpayer may elect the straight-line method at any time within 3 years after the shell is placed in service if that method was not originally claimed. Sec. 168(f)(4)(B)(ii). Petitioners did not make that election within 3 years. Petitioners are required to use the Accelerated Cost Recovery System (ACRS) on these expenditures. For rehabilitation expenditures paid within 3 years of placing the building shell in service, petitioners must use the same depreciation method on the rehabilitation expenditures as used on the shell. Sec. 168(f). Petitioners elected ACRS on the shell starting on October 1, 1982. The rehabilitation was completed in 1984. Petitioners did not amend their returns to elect straight-line depreciation on the shell. Thus, petitioners must use the same depreciation method (ACRS) for the rehabilitation expenditures. They cannot elect straight-line; therefore, the expenditures cannot qualify for the rehabilitation credit. The parties agree to the amount of petitioners' expenses for the Clinton Avenue property other than $ 17,757. Respondent *177 concedes that $ 5,501.45 was paid to Calbert Smith and James Ballard in cash ($ 1,195 paid to Ballard and $ 4,306.45 paid to Smith). Petitioners bear the burden of proving their entitlement to the remaining $ 12,255.55. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). The remaining amount represents cash payments to Miles Manning and other individuals. Calbert Smith testified that he received cash payments from Miles Manning for his work on the Clinton Avenue property. Based on the record and the testimony of Calbert Smith, we find that petitioners made cash payments of $ 17,757 for the rehabilitation of the Clinton Avenue property. Petitioners claimed depreciation on the Clinton Avenue property on their 1982, 1983, and 1984 returns. Depreciation is deductible beginning when property is placed in service. Piggly Wiggly Southern, Inc. v. Commissioner, 84 T.C. 739, 745-746 (1985), affd. on another issue 803 F.2d 1572 (11th Cir. 1986). Leased property is placed in service when it is first held out for lease. Cooper v. Commissioner, 88 T.C. 84, 113-114 (1987); Waddell v. Commissioner, 86 T.C. 848, 897-898 (1986), affd. 841 F.2d 264 (9th Cir. 1988). Petitioners claimed depreciation *178 beginning October 1, 1982, the day they purchased the property. However, the property was not placed in service until April 2, 1984. Petitioners are not entitled to depreciation deductions before that time. Rybak v. Commissioner, 91 T.C. 524, 561 (1988). 3. Old Spanish Trail Property
Petitioners contend they may deduct mortgage interest, real property taxes, depreciation, and other expenses relating to the Old Spanish Trail property. To be entitled to any of these deductions, petitioners must have owned the property when the deductions were claimed. Baird v. Commissioner, 68 T.C. 115, 123 (1977); Dean v. Commissioner, 35 T.C. 1083, 1084-1087 (1961). Petitioners contend that they owned the property because of the installment sales agreement. We view the installment sales agreement as a sham and we give it no effect for Federal income tax purposes, based on the conduct of the parties to the agreement. See Derr v. Commissioner, 77 T.C. 708, 723 (1981). We reach this conclusion because: (1) Kathalyn testified that she and Patrick retained ownership of the property after 1984 and the arrangement was intended to help the McNamaras financially and to generate tax deductions for petitioners; *179 (2) the agreement was not witnessed by the purported witness; (3) it was signed in 1986 or later and was backdated to September 1, 1984; (4) Kathalyn signed Dr. McNamara's signature to the agreement; (5) contrary to its terms (par. 12), the agreement was never recorded; (6) the McNamaras never notified their mortgage company the property had been sold, in violation of the mortgage agreement; (7) when the McNamaras separated and divorced and the property was awarded to Dr. McNamara, there were no documents terminating any interest of petitioner in the property, and petitioner did not treat the transaction as a sale; and (8) petitioner did not file gift tax returns or report the disposition of the property on any tax return. Contrary to paragraph 7 of the agreement, we do not recognize petitioner as the equitable owner of the property for Federal tax purposes. Depreciation is deductible only by the taxpayer who owns a capital interest in the property. Fromm Laboratories, Inc. v. Commissioner, 295 F.2d 726, 729-731 (7th Cir. 1961), affg. T.C. Memo. 1960-202; Reinberg v. Commissioner, 90 T.C. 116, 132-133 (1988); Miller v. Commissioner, 68 T.C. 767, 775 (1977). We conclude that petitioners *180 did not own a capital interest in the Old Spanish Trail property. See Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221 (1981). Interest paid on a mortgage on real estate is not deductible unless it is paid by the legal or equitable owner of the property. Baird v. Commissioner, supra; Dean v. Commissioner, supra. Similarly, real estate taxes are deductible under section 164(a) only by the person on whom the liability is imposed. Magruder v. Supplee, 316 U.S. 394 (1942); Cramer v. Commissioner, 55 T.C. 1125, 1130 (1971). Petitioners claimed rental losses of $ 5,625.36 and $ 15,044.73 on their 1984 and 1985 returns. Petitioners' rental expenses on the property are not deductible. Secs. 162(a), 212(1). We conclude that petitioners are not entitled to depreciation, interest, property tax, or rental expense deductions for the Old Spanish Trail property. 4. Constructive Dividends
Gross income includes dividends. Sec. 61(a)(7). A dividend is a distribution of property by a corporation to its shareholders out of its earnings and profits. Sec. 316(a). A distribution may be a dividend even though not intended or formally declared by the corporation. Crosby v. United States, 496 F.2d 1384, 1388 (5th Cir. 1974); *181 Sachs v. Commissioner, 277 F.2d 879, 882 (8th Cir. 1960), affg. 32 T.C. 815 (1959). When a corporation pays a nondeductible personal expense of its sole shareholder, or permits a shareholder to use corporate property for a personal purpose, the shareholder receives a constructive dividend to the extent he receives a personal or economic benefit. Sec. 301; Falsetti v. Commissioner, 85 T.C. 332, 356 (1985); Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 744 (1973); Ashby v. Commissioner, 50 T.C. 409, 417 (1968). In determining whether there has been a constructive dividend, "The crucial concept * * * is that the corporation conferred an economic benefit on the stockholder without expectation of repayment." United States v. Smith, 418 F.2d 589, 593 (5th Cir. 1969) (fn. ref. omitted). We must determine whether the corporate expenditures were made primarily to benefit petitioner corporation's trade or business or primarily for the benefit of petitioners. Loftin and Woodard, Inc. v. United States, 577 F.2d 1206, 1215-1217 (5th Cir. 1978); Larkin v. Commissioner, 48 T.C. 629, 635 (1967), affd. 394 F.2d 494 (1st Cir. 1968). Whether a corporate distribution is a dividend or compensation *182 for services is a question of fact. Lengsfield v. Commissioner, 241 F.2d 508, 510 (5th Cir. 1957), affg. T.C. Memo. 1955-257. We have found that petitioner corporation paid personal expenses of petitioners, such as petitioners' automobile repairs, petitioners' trips to Germany, St. Thomas, North Dakota, Florida, Oregon, and Chicago, petitioners' golf and country club activities, and petitioners' meals and entertainment. Petitioners have not shown any business purpose which might be served by these payments. Accordingly, petitioners have failed to prove that petitioner corporation intended petitioners' personal use of the automobiles, petitioners' trips, petitioners' golf and country club activities, and petitioners' meals and entertainment to be compensation to petitioner. Absent a showing that the amounts were intended as compensation, they are not deductible by petitioner corporation. B.B. Rider Corp. v. Commissioner, 725 F.2d 945, 951-952 (3d Cir. 1984), affg. T.C. Memo. 1982-98; Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1340-1342 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). We conclude that the value of these items was a constructive dividend *183 taxable to petitioner under section 301 as the sole shareholder of petitioner corporation. We further find that petitioner corporation's payment of petitioner's health and disability insurance premiums was in the nature of compensation, sec. 61(a)(1), and petitioner corporation is entitled to a corresponding deduction therefor. C. Petitioner Corporation and Individual Petitioners
1. Whether the Deficiency Determination Was Arbitrary and Capricious
Petitioners contend that respondent's determination was arbitrary and capricious because respondent did not examine petitioners' records for 1981, 1983, 1984, or 1985. Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977); Jackson v. Commissioner, 73 T.C. 394, 401 (1979). Petitioners contend that a deficiency determination which is not supported by substantive evidence is arbitrary. United States v. Janis, 428 U.S. 433, 441-442 (1976); Weimerskirch v. Commissioner, supra at 362; Jackson v. Commissioner, supra.Respondent contends that the notices of deficiency are presumed to be correct, and that petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). As *184 a general rule, we will not look behind a notice of deficiency to examine respondent's motives. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984); Riland v. Commissioner, 79 T.C. 185, 201 (1982); Jackson v. Commissioner, supra at 400; Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). Petitioners contend that the Court improperly excluded evidence concerning the examination of petitioners' tax returns, specifically, the testimony of Revenue Agent Linder and Appeals Officer Kane. Petitioners maintain that their evidence would have shown that respondent did not examine petitioners' records for any year except 1982. We disagree. Leonard Linder, the revenue agent who conducted the audit of petitioners' returns, testified that he started the audit of petitioners' 1982 return in 1985. He further testified that the audit covered the years 1981 through 1985. We find his testimony to be credible. The record reflects no evidence which supports petitioners' allegations. Here, the notices directly pertain to petitioners and were issued after an audit. Petitioners have not alleged any evidence sufficient to cause us to go behind the statutory notice of deficiency under *185 Greenberg's Express, Inc. v. Commissioner, supra.We are satisfied that petitioners raise no issue warranting that we go behind the statutory notice of deficiency. 2. Statute of Limitations for 1981
Respondent sent a notice of deficiency to petitioners for 1981 within the period covered by Forms 872-A applicable to petitioners' individual return. The deficiency notice sent to petitioners was not sent within the period of limitations for petitioner corporation's 1981 return. Petitioners argue that the statute of limitations should be applied at the corporation level, and therefore assessment of petitioners' tax on a deemed capital gain distribution from petitioner corporation is barred. Respondent contends that the statute of limitations is applied at the shareholder level, and thus assessment of petitioners' tax is not barred. We agree with respondent. Petitioners cite Kelley v. Commissioner, 877 F.2d 756 (9th Cir. 1989), revg. T.C. Memo. 1986-405, where the Court of Appeals for the Ninth Circuit held that the period of limitations under section 6501(a) with respect to adjustments to the income of subchapter S corporations applies at the corporate level, and thus respondent's notice *186 of deficiency to the individual taxpayer-shareholders was barred by the statute of limitations. However, after petitioners submitted their brief, the Supreme Court held that the limitations period for assessing income tax liability of an S corporation shareholder runs from the date on which the shareholder's return is filed. Bufferd v. Commissioner,     U.S.    ,    , 113 S. Ct. 927, 932 (1993). The Supreme Court reasoned that the return referred to in section 6501(a) is the return of the taxpayer against whom a deficiency is assessed. Id. at    , 113 S. Ct. at 930. There is no support for petitioners' claim that their return cannot be adjusted after the time has run for assessing a tax against petitioner corporation. Id. at    , 113 S. Ct. at 932 n.11, citing Commissioner v. Munter, 331 U.S. 210 (1947); Lardas v. Commissioner, 99 T.C.     (1992). Accordingly, we hold that assessment of tax is not barred for petitioners for 1981. 3. Additions to Tax for Fraud
a. General
We next decide whether petitioners are liable for the additions to tax for fraud under section 6653(b) for 1981, and whether petitioner corporation and petitioners are liable for additions to tax for fraud under *187 section 6653(b)(1) and (2) for 1982 through 1985. The existence of fraud is a question of fact to be determined from the entire record. Castillo v. Commissioner, 84 T.C. 405, 409 (1985). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). This burden is met if respondent shows that the taxpayer intended to evade taxes which he knew or believed he owed by conduct intended to conceal, mislead, or otherwise prevent tax collection. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Respondent must prove fraud for each year for which it is determined. Estate of Stein v. Commissioner, 25 T.C. 940, 959-963 (1956), affd. sub nom. Levine v. Commissioner, 250 F.2d 798 (2d Cir. 1958). For purposes of section 6653(b), fraud is an intentional wrongdoing, Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958), or intentional act or acts for the specific purpose of evading a tax believed to be owing, Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Niedringhaus v. Commissioner, 99 T.C.     (1992). Fraud is not imputed from one spouse to another; *188 in the case of a joint return, respondent must prove fraud as to each spouse charged with liability for the addition to tax. Sec. 6653(b)(3); Hicks Co. v. Commissioner, 56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Stone v. Commissioner, 56 T.C. 213, 227-228 (1971). Fraudulent intent may be inferred from circumstantial evidence. Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985), affg. T.C. Memo. 1983-249: Petitioner's entire course of conduct can be relied upon to establish fraudulent intent. Laurins v. Commissioner, 889 F.2d 910, 913 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265. Among the factors to be considered are petitioner's education and intelligence, Niedringhaus v. Commissioner, supra; Drobny v. Commissioner, 86 T.C. 1326, 1349 (1986), and the plausibility (or implausibility) of the taxpayer's explanations. Boyett v. Commissioner, 204 F.2d 205, 208 (5th Cir. 1953), affg. a Memorandum Opinion of this Court dated Mar. 14, 1951. Courts have enumerated a number of "badges of fraud" which tend to establish fraud for purposes of section 6653(b). Laurins v. Commissioner, supra at 913; Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), *189 affg. T.C. Memo. 1984-601; Rowlee v. Commissioner, supra at 1125. Fraud has been found where the taxpayer claimed false exemptions, Miller v. Commissioner, 51 T.C. 915, 917-918 (1969); and the taxpayer's explanations were implausible, Boyett v. Commissioner, supra.A taxpayer's failure to supply complete information about his income and expenses to his tax return preparer may be further evidence of fraud. Korecky v. Commissioner, 781 F.2d 1566, 1568-1569 (11th Cir. 1986), affg. per curiam T.C. Memo. 1985-63. Another indicium of fraud is a pattern of corporate payment of personal expenses. Simmons v. Commissioner, T.C. Memo. 1980-55. A fraudulent underpayment of taxes may result from an overstatement of deductions as well as an understatement of income. Drobny v. Commissioner, supra at 1349-1351; Hicks Co. v. Commissioner, 56 T.C. 982, 1019 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Neaderland v. Commissioner, 52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970). We find a number of the indicia of fraud present in this case, as discussed below. b. Fraud With Respect to Old Spanish Trail Property -- Dr. McNamara's Testimony
Respondent relied on the testimony of Dr. McNamara *190 on this issue. Dr. McNamara testified that he never agreed to lease the property, and that the extent of the agreement with petitioner was that petitioner would pay the mortgage and claim the tax deductions, and Dr. McNamara would pay $ 700 per month. In his testimony, Dr. McNamara initially avoided referring to the payments to petitioner as rent; instead, he called them "payments towards the mortgage payment." However, on cross-examination, it became clear that Dr. McNamara was fully aware of the rental arrangement. This was shown by a handwritten letter in which Dr. McNamara wrote to petitioner about the payment of rent and other expenses of the Old Spanish Trail property. The letter states, "Dear Dad, Enclosed are the light bill, the condo fee coupons, and the mortgage coupons. You should also find a check for November's rent * * *. Let us know what we need to sign as far as a 'lease' goes." Dr. McNamara's letter shows that his denial of agreeing to lease the property, and his avoidance of referring to the payments as rent, was misleading. In later testimony, he admitted that he and Kathalyn did refer to the payments as "rent". Dr. McNamara was not a credible witness. Dr. *191 McNamara testified that he disliked petitioners. In view of the clear showing that his testimony was at best intentionally misleading, we give it no weight. Petitioner's handling of the Old Spanish Trail property lease agreement was at best misguided. To support their claim of ownership of the Old Spanish Trail property, petitioners gave respondent what purported to be an installment sale agreement dated September 1, 1984, and a lease, both apparently signed by the McNamaras. Petitioners also gave respondent two annual loan statements on the property that were addressed to the McNamaras. The upper left-hand corner, where the McNamaras' names appear, was torn off on both. Kathalyn signed both the sales agreement and lease for Dr. McNamara. The person who purportedly witnessed the signatures of the McNamaras and petitioners on the sales agreement is Eileen Goodwin, a technician at Nazareth Hospital. She did not in fact witness the signatures. We have found that the installment agreement was a sham and that the benefits and burdens of ownership of the Old Spanish Trail property did not pass to petitioners. Petitioner argues that he reasonably believed that he was entitled to the *192 deductions for the Old Spanish Trail property because he relied on O'Neill, a tax attorney, who advised him that the installment sale arrangement would enable him to take the tax deductions for the property. We find that petitioner's reliance on O'Neill was justified and we conclude that his handling of the purported sale-leaseback of the Old Spanish Trail property to obtain tax deductions was not fraudulent. c. Fraud With Respect to Petitioners' Charitable Contributions, Dependency Exemptions, and Miscellaneous Deductions
Petitioner corporation deducted numerous personal expenses of petitioners each year; for example, it deducted the cost of repairs to petitioner wife's and petitioners' daughter's personal automobiles, dinners with petitioners' daughter, birthday parties for petitioner wife and petitioners' daughter, a gin rummy tournament, flowers sent to petitioner wife and petitioners' daughter, tickets to the Governors' Ball at HVCC, and merchandise petitioner ordered from the Smithsonian Institution. Petitioner was petitioner corporation's sole shareholder. He was aware the corporation deducted these expenses. Petitioner wrote the corporate checks, and submitted the quarterly *193 receipts in each year to his accountant. Petitioner knew each of the expenses paid by corporate check would be deducted. We find that petitioner's failure to report on his returns the constructive dividends and other income resulting from the corporate payment of petitioners' personal expenses throughout the years in issue is an indicium of petitioner's fraud. Simmons v. Commissioner, supra.
Petitioner testified falsely that he entertained persons identified on the business receipts; that he did not make any additional entries to the 1982 diary; and that he made all of the handwritten entries on the receipts contemporaneously. Petitioner falsely claimed he entertained doctors he never entertained. He falsely characterized persons entertained as referring doctors when they were not. Petitioners argue that some of the discrepancy between petitioner's claims of entertaining Dr. Brian Hayes and Dr. Hayes' testimony to the contrary is attributable to petitioner's confusion of Dr. Hayes and his brother, Dr. Martin Hayes. This statement is not supported by the record. Petitioner's testimony and records indicate no confusion between the brothers. Petitioner testified that he entertained *194 Dr. Brian Hayes, who was a referring doctor, on various occasions. He testified that Brian was the brother of Martin, and he claimed he had twice entertained Brian and Martin on the same occasion. Petitioner's records purport to show that he entertained Dr. Brian Hayes 26 times, and his list of doctors entertained names both Drs. Brian and Martin Hayes. We conclude that the discrepancy between petitioner's claims and Dr. Hayes' testimony results from petitioner's false claims of entertaining Dr. Hayes during the years in issue. Respondent analyzed some of the inks submitted by petitioners to ascertain their manufacturing date. Some of the inks petitioner used to make notations in the 1982 diary and on the backs of receipts were not available when petitioner claimed to have entertained persons. Other indicia of petitioner's intent to evade taxes include falsely claiming Patrick McNamara as a dependent child on petitioners' 1981 and 1982 returns; falsely claiming on their 1981 through 1987 returns that petitioner's mother lived with them 12 months a year when she never lived with them; and claiming on their 1983 return that petitioner wife's mother lived with them for 12 months when *195 she had died in May 1983. Miller v. Commissioner, 51 T.C. 915, 917-918 (1969). Petitioner argues that he did not closely review the part of the returns where exemptions are claimed. The inference of fraud is apparent because we are not persuaded that mere negligence accounts for petitioner's claiming Patrick as a dependent child, or his claim that petitioner wife's mother lived with petitioners for 12 months in a year in which she had died in May. Petitioner's deduction of nonexistent contributions to the two churches is also an indicia of fraud. Petitioner wife testified she attended church regularly and contributed $ 50 a week during 1983, 1984, and 1985 when in fact she did not attend. The evidence clearly shows that petitioners did not make the contributions as claimed. Deduction of the fictitious contributions was clearly erroneous, intentional, and fraudulent. Petitioners failed to report as income a petitioner corporation check payable to petitioner wife in the amount of $ 1,500, which was deducted by petitioner corporation in 1984 as a meetings expense. Petitioner testified that this was salary to petitioner wife. In 1983 petitioner corporation deducted $ 6,250 salary *196 payments to petitioner wife, yet she only reported $ 3,500. An understatement of income is a badge of fraud. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601. We believe that petitioner planned petitioners' tax strategies, and that petitioner wife's only role in this plan was supporting her husband at trial. Petitioner wife's testimony regarding the charitable contributions to the churches was clearly incredible and unbelievable. Her testimony was contradicted by Father Glynn and Father Conohan, both of whom we found to be highly credible. Accordingly, respondent has proven by clear and convincing evidence that petitioner wife is liable for the addition to tax for fraud with respect to the charitable contributions. She therefore owes additions under section 6653(b) (1) on the whole of the underpayments in petitioners' income taxes for 1983, 1984, and 1985, and under section 6653(b)(2) on the portions of those underpayments attributable to the disallowance of the charitable deductions claimed for the alleged donations to the churches. The various explanations offered by petitioner (that he relied on Graham to classify expenses, that he *197 did not closely review the claimed exemptions, and that he inadvertently made mistakes in making notations on the backs of his entertainment receipts) are too incredible and implausible to be believed. We find that petitioner is liable for the addition to tax for fraud except with respect to the Old Spanish Trail property. He therefore owes additions to tax under section 6653(b)(1) on the whole of the underpayments in petitioners' income taxes for 1981 through 1985, and under section 6653(b)(2) on the whole of the underpayments for 1982 through 1985 except such portions as are attributable to the disallowance of deductions claimed for the Old Spanish Trail property. d. Fraud With Respect to Petitioner Corporation
With respect to petitioner corporation, we find the requisite proof of fraudulent intent in the acts of its sole shareholder, petitioner, who completely dominated its activity. See Auerbach Shoe Co. v. Commissioner, 21 T.C. 191, 194 (1953), affd. 216 F.2d 693 (1st Cir. 1954); Moore v. Commissioner, T.C. Memo. 1977-275, affd. 619 F.2d 619 (6th Cir. 1980); cf. Asphalt Industries, Inc. v. Commissioner, 384 F.2d 229, 233 and n.11 (3d Cir. 1967), revg. 46 T.C. 622 (1966) *198 (fraud of a sole shareholder may be attributed to corporation). Here, petitioner corporation's income was understated in significant amounts in each of 1982, 1983, 1984, and 1985 by claiming deductions for expenses which we have held were for petitioners' personal benefit. The record is replete with instances of petitioner corporation's excessive approach to claiming deductions. Petitioner allocated expenses to the various deduction categories and directed his accountant which expenses petitioner corporation was to deduct. The consistent pattern of claiming unallowable deductions causing underpayments of income tax over a period of years is a strong indicium of fraud. Hicks Co. v. Commissioner, 56 T.C. 982, 1019-1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972). In view of the record, we conclude that petitioner corporation is liable for the additions to tax for fraud for 1982 through 1985. 4. Substantial Understatement Under Section 6661
Respondent determined that petitioners are liable for additions to tax under section 6661 for 1982, 1983, 1984, and 1985. Petitioners offered no testimony and failed to address this issue on brief. We find that petitioners substantially understated *199 their income for 1982 through 1985, and are liable for the additions to tax under section 6661. Decisions will be entered under Rule 155. Footnotes
1. The following cases were consolidated herewith for purposes of trial, briefing, and opinion: Francis P. and Audrie C. Manning, docket No. 6117-90; and Francis P. Manning, M.D., Ltd., docket Nos. 4920-90 and 6116-90.↩
1. Sec. 6653(a)(1) and (2) and 6651 additions are alternative to the additions determined under sec. 6653(b)(1) and (2)↩.
2. Fifty percent of the interest due on the entire deficiency.
2. We note that petitioner corporation purchased the BMW and petitioner placed it in service in April 1984, 2 months before the effective date of sec. 280F, which applies to property placed in service after June 18, 1984.↩
3. Appeal of this case would be to the Court of Appeals for the Third Circuit, which has not addressed the issue of whether a cash basis taxpayer is allowed to accrue Federal taxes in computing earnings and profits. See Mazzocchi Bus Co. v. Commissioner, T.C. Memo. 1993-43↩.